Kathleen M. Kundar (KK1674)
Jami L. Mevorah (JM0527)
FOX HORAN & CAMERINI LLP
825 Third Avenue
New York, New York 10022
Tel.: (212) 480-4800
Fax: (212) 269-2383
Email: kmkundar@foxlex.com
Email: jmevorah@foxlex.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | | |
|---|---|---|
| NICOLE SOFIA JACUBOVICH and CALANIT DIVA JACUBOVICH, | ) ) ) | |
| Plaintiffs, | ) ) | Case No.: |
| -against- | ) ) | **VERIFIED COMPLAINT** |
| THE STATE OF ISRAEL, COMPUTERSHARE INC., and COMPUTERSHARE TRUST COMPANY, N.A., | ) ) ) ) ) | |
| Defendants. | ) ) | |

_____ )

Plaintiffs Nicole Sofia Jacubovich and Calanit Diva Jacubovich (collectively, "Plaintiffs"), by and through their attorneys, Fox Horan & Camerini LLP, as and for their Verified Complaint against Defendants State of Israel, Computershare Inc., and Computershare Trust Company, N.A. (collectively, "Defendants"), allege as follows, upon knowledge as to themselves and their own actions and upon information and belief as to all other matters:

**NATURE OF THE CASE**

1.      This action concerns two State of Israel Jubilee Fixed Rate Bonds (Seventh Series) – one for $5.425 million (the "First Bond"), and one for $4.94 million (the "Second Bond") – which were offered to the public and issued to the Estate of Manuel Jacubovich by the State of Israel.

2.      Although Plaintiffs, the great-nieces of decedent Manuel Jacubovich, were the sole heirs of the Estate of Manuel Jacubovich, the State of Israel – through its Fiscal Agent, Computershare Inc. and Computershare Trust Company, N.A. – wrongly paid the proceeds of the First Bond to a corporate account controlled by Manuel Jacubovich's brother, Jaime Moises Jacubovich ("Jaime Jacubovich").

3.      For their claims in this action, Plaintiffs seek damages and other relief from the State of Israel, Computershare Inc., and Computershare Trust Company, N.A., including for:  (a) their failure to pay Plaintiffs any amount on the First Bond; and (b) their failure to pay Plaintiffs certain interest payments on the Second Bond.

**THE PARTIES**

4.      Plaintiff Nicole Sofia Jacubovich is an Argentine citizen residing at Vuelta de Obligado 1715, Torre Libra, 23rd Floor "A", Zip Code 1425, Buenos Aires, Argentina.

5.      Plaintiff Calanit Diva Jacubovich is an Argentine citizen residing at Vuelta de Obligado 1715, Torre Libra, 23rd Floor "A", Zip Code 1425, Buenos Aires, Argentina.

6.      Defendant State of Israel is a foreign sovereign which conducts its business affairs by and through various agencies, including, but not limited to, the Ministry of Finance of the State of Israel (the "Ministry of Finance").  In the Prospectus applicable to the First Bond and the Second Bond, dated December 15, 2010, as filed with the United States Securities and Exchange

Commission (the "Prospectus"), the Chief Fiscal Officer for the Western Hemisphere of the Ministry of Finance in New York, New York is listed as the State of Israel's Authorized Representative and agent for service of process in legal actions based on the bonds that the owners of the bonds may institute in this Court.  The Ministry of Finance conducts business and maintains offices within the Southern District of New York at 800 Second Avenue, 17th Floor, New York, New York 10017.

7.       Defendant Computershare Inc. is a corporation duly organized and existing under the laws of the State of Delaware with a principal place of business at 250 Royall Street, Canton, Massachusetts 02021.  Defendant Computershare Inc. conducts business and maintains offices within the Southern District of New York at 1290 Avenue of the Americas, 9th Floor, New York, New York 10104.

8.       Defendant Computershare Trust Company, N.A. is a wholly-owned subsidiary of Defendant Computershare Inc., and is a federal banking association with its main office at 250 Royall Street, Canton, Massachusetts 02021.

## JURISDICTION, VENUE, AND APPLICABLE LAW

9.       This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1330(a) because this action is a non-jury civil action against the State of Israel, a foreign state which has explicitly waived its immunity to this lawsuit in this Court, pursuant to 28 U.S.C. § 1605(a)(1).  *See, infra*, ¶ 31.

10.      This Court has supplemental jurisdiction as to claims against Defendants Computershare Inc. and Computershare Trust Company, N.A. (collectively, "Computershare") pursuant to 28 U.S.C. § 1367(a) in that the claims are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy.

11.    This Court has personal jurisdiction over the State of Israel pursuant to 28 U.S.C. § 1330(b) because this Court has original jurisdiction over this action under 28 U.S.C. § 1330(a) and because the State of Israel consented to jurisdiction in this Court. *See, infra*, ¶ 31; *see also* Prospectus.

12.    This Court has personal jurisdiction over Computershare because Defendants Computershare Inc. and Computershare Trust Company, N.A. each consented to personal jurisdiction in New York and the non-exclusive jurisdiction of this Court. *See, infra*, ¶ 31.

13.    Specific jurisdiction also exists as to each of the Defendants because Plaintiffs' claims in this action arise out of Defendants' transaction of business in the Southern District of New York, including, among other things, Defendants' "execut[ion] and deliver[y] in New York, New York" of the Fiscal Agency Agreement, as defined herein. *See id.*

14.    Venue in this Court is appropriate because each of the Defendants consented to venue in this Court. *See id.*

15.    The law of the State of New York is the applicable law in this action. *See id.*

## FACTUAL BACKGROUND

### I.    The Israeli Bond Program

16.    Since at least 1951, the State of Israel has issued bonds to the public.

17.    The Ministry of Finance engages in various activities with respect to the Israeli bond program, including, but not limited to, publishing an Investor Newsletter and participating in the State of Israel's efforts to sell bonds.

18.    Development Corporation for Israel ("DCI") is the underwriter of bonds issued by the State of Israel in the United States.

19.     Israel Bonds International ("IBI") is the underwriter of bonds issued by the State of Israel outside of the United States and Canada.

20.     Computershare is the Fiscal Agent, Registrar, and Transfer Agent for certain bonds issued by the State of Israel, including, but not limited to, State of Israel Jubilee Fixed Rate Bonds (Seventh Series).

21.     The Ministry of Finance, DCI, IBI, and Computershare are agents of the State of Israel with respect to State of Israel Jubilee Fixed Rate Bonds (Seventh Series).

**II.     The Fiscal Agency Agreement and "Form of Definitive Bonds"**

22.     By Master Fiscal Agency Agreement dated February 3, 2010 (the "Fiscal Agency Agreement"), the State of Israel appointed Computershare as Fiscal Agent, Registrar, and Transfer Agent with respect to certain bonds issued by the State of Israel.  A true and correct copy of the Fiscal Agency Agreement is annexed hereto as **Exhibit A**.

23.     The Fiscal Agency Agreement was entered into with respect to State of Israel Jubilee Fixed Rate Bonds (Seventh Series), among other bonds.

24.     The First Bond and the Second Bond are State of Israel Jubilee Fixed Rate Bonds (Seventh Series) issued by the State of Israel under the Fiscal Agency Agreement and are subject to the terms set forth in the "Form of Definitive Bonds" annexed to the Fiscal Agency Agreement as "Schedule B."  A true and correct copy of the "Form of Definitive Bonds," annexed to the Fiscal Agency Agreement as "Schedule B," is annexed hereto as **Exhibit B**.

25.     As provided in the "Form of Definitive Bonds," the Fiscal Agency Agreement describes the rights and limitations of the rights of the owners of the Bonds and the responsibilities and limitations of the responsibilities of the Fiscal Agent.

26.     Payment of the proceeds of the First Bond and the Second Bond, and/or payment of interest thereon, are transactions contemplated by the Fiscal Agency Agreement.

III.    **Provisions of the Fiscal Agency Agreement and "Form of Definitive Bonds"**

27.     Section 2.3(a) of the Fiscal Agency Agreement provides:  "Purchasers of Bonds shall not be entitled to receive certificated Bonds in a definitive form ("Definitive Bonds"), unless specifically requested in accordance with the terms of the Bonds. . . . [T]he Fiscal Agent shall create a book-entry facility for each issue of Bonds, whereby each owner of Bonds shall be registered. . . . Holders of such book-entry Bonds shall have all the rights and obligations of Bondholders hereunder."  Ex. A (Fiscal Agency Agreement), § 2.3(a).

28.     Section 2.3(b) of the Fiscal Agency Agreement provides:  "Definitive Bonds shall be substantially in the form attached hereto as Schedule B, all provisions of which are expressly incorporated into and made a part of this Agreement and of each Bond, whether issued as Definitive Bond or in book-entry form."  Ex. A (Fiscal Agency Agreement), § 2.3(b).

29.     Section 2.4(g) of the Fiscal Agency Agreement provides:  "The executor, administrator or other legal representative of an owner who has died shall succeed to all the rights of such owner."  Ex. A (Fiscal Agency Agreement), § 2.4(g).

30.     Section 6.2(f) of the Fiscal Agency Agreement provides:  "The Fiscal Agent shall promptly notify the State and [DCI] regarding any material issues encountered with Bondholders or any problematic or questionable transactions (for example, transactions involving incorrect paperwork, missing documentation, duplications, etc.)."  Ex. A (Fiscal Agency Agreement), § 6.2(f). See also §1.1.p.

31.     Section 9.10 of the Fiscal Agency Agreement  provides:

This Agreement has been executed and delivered in New York, New York, and is made pursuant to, and shall in all respects be governed by,

and construed in accordance with, the laws of the State of New York without regard to principles of conflict of laws.  The parties agree that all actions and proceedings arising out of this Agreement or any of the transactions contemplated hereby, shall be brought in the United States District Court for the Southern District of New York or in a New York State court in the County of New York and that in connection with any such action or proceeding, submit to the jurisdiction of and venue in such court.  Each of the parties hereto also irrevocably waives all right to trial by jury in any action, proceeding or counter claim arising out of this Agreement or the transactions contemplated hereby.  In respect of any proceedings which may be brought under this Agreement, Israel irrevocably agrees not to assert the defense of immunity on the grounds of sovereignty or otherwise from jurisdiction.

Ex. A (Fiscal Agency Agreement), § 9.10.

32.     The "Form of Definitive Bonds" provides:  "Reference is hereby made to the Fiscal Agency Agreement for a description of the rights and limitations of the rights of the owners of the Bonds and of the responsibilities and limitations of the responsibilities of the Fiscal Agent."  Ex. B ("Form of Definitive Bonds"), p.3.

33.     The "Form of Definitive Bonds" provides:  "Payment of the principal of and interest on this Bond shall be made at the principal corporate trust office of the Fiscal Agent[.]" *Id.*

34.     The "Form of Definitive Bonds" provides:  "This Bond is the direct, unconditional, general obligation of the State, and the State pledges its full faith and credit for the due and punctual payment of principal, interest and Redemption Price, as herein provided, and for the due and timely performance of all obligations of the State hereunder and under the Fiscal Agency Agreement."  *Id.*

35.     The "Form of Definitive Bonds" provides:  "The State hereby certifies and declares that all acts, conditions and things required to be done and performed and to have happened, before the creation and issuance of the Bonds, to constitute the same valid, legal and

7

binding obligations of the State in accordance with their terms, have been done and performed and have happened in due and strict compliance with the law of the State."  Ex. B ("Form of Definitive Bonds"), p.4.

36.    The "Form of Definitive Bonds" provides:  "This Bond is non-transferable and non-assignable except in the special instances referred to in this Bond and subject to the terms and conditions of this Bond and of the Fiscal Agency Agreement."  *Id.*

## III.    Plaintiffs' Relationships

37.    Plaintiffs' father was Abel Jacubovich, a well-known notary public in Argentina.

38.    Plaintiffs' grandfather – Abel Jacubovich's father – is Jaime Jacubovich.  Jaime Jacubovich is heavily involved in the Jewish community in Argentina and sits on the Board of the *Delegacion de Asociaciones Israelitas Argentinas* (the "Delegation of Argentine Jewish Associations").  Jaime Jacubovich is honorary president of IBI, is closely affiliated with members of the Board of IBI and various Israeli officials, and recently appeared in the Knesset of the State of Israel to present a book he wrote.

39.    Plaintiffs' great-uncle – Abel Jacubovich's uncle and Jaime Jacubovich's brother – was Manuel Jacubovich.

40.    Manuel Jacubovich died on November 19, 2010, having left a will naming Abel Jacubovich the sole heir of the Estate of Manuel Jacubovich.

41.    Abel Jacubovich died intestate one month later, on December 21, 2010.

42.    On or about February 1, 2011, Plaintiffs commenced a joint probate proceeding for the Estate of Manuel Jacubovich and for the Estate of Abel Jacubovich in the Court on Civil Matters No. 39, Case No. 1762/2011, in the City of Buenos Aires, Argentina.  A copy of Manuel Jacubovich's will – which named Abel Jacubovich, Plaintiffs' father, the sole heir of the Estate

of Manuel Jacubovich – was attached to Plaintiffs' public filings in the joint probate proceeding. Copies of Plaintiffs' birth certificates – which proved that Plaintiffs were the heirs of Abel Jacubovich – were also attached to Plaintiffs' public filings in the joint probate proceeding.

43.    In February 2011, notice of the deaths of Manuel Jacubovich and Abel Jacubovich and the commencement of the joint probate proceeding was published in three (3) Argentine newspapers on six (6) separate days.  Publication of such notice is the regular practice in Argentina because it is required by Argentine law, pursuant to article 2340 of the civil and commercial code and article 699 of the code of civil and commercial procedure.

44.    At the conclusion of the joint probate proceeding, the Argentine court, in 2011, deemed Abel Jacubovich the sole heir of the Estate of Manuel Jacubovich and Plaintiffs the sole heirs of the Estate of Abel Jacubovich.  Accordingly, the Argentine court deemed Plaintiffs the sole heirs of both the Estate of Manuel Jacubovich and the Estate of Abel Jacubovich.

45.    As the sole heirs of the Estate of Manuel Jacubovich, Plaintiffs are the rightful owners of all assets held by the Estate of Manuel Jacubovich.

46.    As the sole heirs of the Estate of Abel Jacubovich, Plaintiffs are the rightful owners of all assets held by the Estate of Abel Jacubovich.

47.    Jaime Jacubovich was never the executor, administrator, or other legal representative of the Estate of Manuel Jacubovich.  Jaime Jacubovich was never the heir of Manuel Jacubovich.

48.    Jaime Jacubovich was never the executor, administrator, or other legal representative of the Estate of Abel Jacubovich.  Jaime Jacubovich was never the heir of Abel Jacubovich.

**IV.    The First Bond and the Second Bond**

49.    The First Bond was offered to the public and issued to the Estate of Manuel Jacubovich by the State of Israel on or about May 1, 2012.

50.    The Second Bond was offered to the public and issued to the Estate of Manuel Jacubovich by the State of Israel on or about July 1, 2012.

51.    The Estate of Manuel Jacubovich paid valuable consideration in the amount of $5.425 million for the First Bond.

52.    The Estate of Manuel Jacubovich paid valuable consideration in the amount of $4.94 million for the Second Bond.

53.    As the sole heirs of the Estate of Manuel Jacubovich, Plaintiffs succeeded to all rights of the Estate of Manuel Jacubovich with respect to the First Bond and the Second Bond. *See* Ex. A (Fiscal Agency Agreement), § 2.4(g) ("The executor, administrator or other legal representative of an owner who has died shall succeed to all the rights of such owner.").

54.    The First Bond matured on or about May 1, 2014.

55.    On May 10, 2014, Plaintiffs requested payment of the First Bond, plus interest, which had already matured, and payment of the Second Bond, plus interest, upon its maturity on July 1, 2014.

56.    Plaintiffs discovered that the State of Israel – by and through its Fiscal Agent, Computershare – had already paid the proceeds of the First Bond to a then-unknown party (or parties) and not to Plaintiffs, the sole heirs of the Estate of Manuel Jacubovich.

57.    Upon being informed by representatives of the State of Israel that the First Bond had already been redeemed and paid out, Plaintiffs, through their counsel, proceeded to redeem the Second Bond when it matured on July 1, 2014.  In redeeming the Second Bond, among other

things, Plaintiffs presented proof that they are the sole heirs of the Estate of Manuel Jacubovich, to wit: the rulings of the Argentine court in the joint probate proceeding commenced by Plaintiffs for the Estate of Manuel Jacubovich and the Estate of Abel Jacubovich.

58.    On July 1, 2014, the State of Israel issued a check for the maturity value of the Second Bond in the amount of $4.94 million and a check for interest thereon, in the amount of $6,109.36. Both checks were payable to the Estate of Manual Jacubovich

59.    Both checks were sent by the State of Israel via overnight courier to Plaintiffs at Plaintiffs' address (Vuelta de Obligado 1715, Torre Libra, 23rd Floor "A", Zip Code 1425, Buenos Aires, Argentina).

60.    In sending the checks to Plaintiffs, the State of Israel acknowledged that Plaintiffs are the sole and rightful heirs of the Estate of Manuel Jacubovich.

61.    By correspondence dated July 20, 2014, Plaintiffs, through their counsel, demanded that the State of Israel make payment to Plaintiffs under the First Bond. Plaintiffs' counsel continued to demand that the State of Israel make payment to Plaintiffs under the First Bond in numerous emails, telephone calls, and in-person meetings, including an in-person meeting between Plaintiffs' counsel and the State of Israel's counsel in New York, New York in September 2014, which had been scheduled at the request of the State of Israel. The State of Israel, however, refused to make any payment to Plaintiffs under the First Bond.

62.    Due to the State of Israel's refusal to make payment on the First Bond to Plaintiffs or to supply any additional information to Plaintiffs concerning the payment on the First Bond, Plaintiffs' investigation into this matter has continued.

63.     On December 8, 2015, Plaintiffs discovered that the State of Israel – by and through its Fiscal Agent, Computershare – paid the proceeds of the First Bond by wiring the funds to a Panamanian bank account, in accordance with Jaime Jacubovich's instructions.

64.     In January 2016, Plaintiffs discovered the existence of a corporate entity created in Panama and named E.M.J., S.A. (ESTATE OF MANUEL JACUBOVICH).  Upon information and belief, this corporate entity was created and was controlled (and continues to be controlled) by Jaime Jacubovich.  Plaintiffs also discovered that the State of Israel – by and through its Fiscal Agent, Computershare – paid the proceeds of the First Bond by wiring the funds to a Panamanian bank account held by E.M.J., S.A. (ESTATE OF MANUEL JACUBOVICH).

65.     Plaintiffs have no connection to E.M.J., S.A. (ESTATE OF MANUEL JACUBOVICH) or to its bank account.  Plaintiff Nicole Sofia Jacubovich, as executor, never authorized or directed that any payment to the Estate of Manuel Jacubovich, of any kind, be made to that bank account, nor did Plaintiff Calanit Diva Jacubovich.

66.     Although the State of Israel and Computershare had been instructed by Jaime Jacubovich to pay the proceeds of the Second Bond to a Panamanian bank account held by E.M.J., S.A. (ESTATE OF MANUEL JACUBOVICH), a corporate entity created and controlled by Jaime Jacubovich, the State of Israel did not proceed under such instructions after Plaintiffs presented proof that they are the sole and rightful heirs of the Estate of Manuel Jacubovich.

67.     For almost four years, the State of Israel – through Argentine Israeli Embassy personnel, IBI, DCI, various accounts, and various lawyers in three continents – has refused to make payment on the First Bond to Plaintiffs and has refused to supply any information to Plaintiffs concerning the payment of the proceeds of the First Bond, other than to admit that the

proceeds were paid according to instructions and documentation received from Jaime

Jacubovich, and were not paid to Plaintiffs.

## FIRST COUNT
### (Declaratory Judgment – First Bond)

68.     Plaintiffs repeat and reallege Paragraphs "1" through "67" as if more fully set

forth herein.

69.     The First Bond was offered to the public and issued to the Estate of Manuel

Jacubovich by the State of Israel.

70.     At the conclusion of an Argentine probate proceeding, the Argentine court

deemed Plaintiffs the sole heirs of the Estate of Manuel Jacubovich, a fact available to the public.

71.     As the sole heirs of the Estate of Manuel Jacubovich, Plaintiffs succeeded to all

rights of the Estate of Manuel Jacubovich with respect to the First Bond.

72.     As the sole heirs of the Estate of Manuel Jacubovich, and having succeeded to all

rights of the Estate of Manuel Jacubovich with respect to the First Bond, Plaintiffs, under the

terms of the First Bond, are entitled to payment of the $5.425 million in proceeds of the First

Bond, plus at least $110,670.00 in interest, including, but not limited to, all interest paid before

the redemption of the First Bond and all interest paid upon the redemption of the First Bond.

73.     There exists an actual case or controversy as to the terms of the First Bond, in that

the State of Israel has asserted, among other things, that because it has paid the First Bond (albeit

to the wrong party), the terms of the First Bond do not require payment to Plaintiffs because the

State of Israel is not obligated to pay twice.

74.     Based on the foregoing, Plaintiffs are entitled to a Declaratory Judgment under 28

U.S.C. § 2201 that under the terms of the First Bond, Plaintiffs – as the sole heirs of the Estate

of Manuel Jacubovich – succeeded to all rights of the Estate of Manuel Jacubovich with respect to the First Bond and are entitled to payment of the $5.425 million in proceeds of the First Bond, plus at least $110,670.00 in interest, including, but not limited to, all interest payments paid before the redemption of the First Bond and all interest paid upon the redemption of the First Bond to any party (or parties) other than Plaintiffs, plus any other damages as may be established at trial.

## SECOND COUNT
### (Breach of Contract – First Bond)

75.    Plaintiffs repeat and reallege Paragraphs "1" through "74" as if more fully set forth herein.

76.    The First Bond was offered to the public and issued to the Estate of Manuel Jacubovich by the State of Israel.

77.    The Estate of Manuel Jacubovich paid valuable consideration in the amount of $5.425 million for the First Bond.

78.    The Fiscal Agency Agreement and "Form of Definitive Bonds" govern State of Israel Jubilee Fixed Rate Bonds (Seventh Series).

79.    The First Bond is a State of Israel Jubilee Fixed Rate Bond (Seventh Series).

80.    The Fiscal Agency Agreement and "Form of Definitive Bonds" govern the First Bond.

81.    The First Bond is "substantially in the form" of the "Form of Definitive Bonds," and the terms set forth in the "Form of Definitive Bonds" are "expressly incorporated into and made a part of" the First Bond.  Ex. A (Fiscal Agency Agreement), § 2.3(b).

82.     The Fiscal Agency Agreement and the First Bond were, at all relevant times, valid and enforceable contracts.

83.     At the conclusion of an Argentine probate proceeding, in 2011, the Argentine court deemed Plaintiffs the sole heirs of the Estate of Manuel Jacubovich.

84.     As the sole heirs of the Estate of Manuel Jacubovich, Plaintiffs succeeded to all rights of the Estate of Manuel Jacubovich with respect to the First Bond.  *See* Ex. A (Fiscal Agency Agreement), § 2.4(g) ("The executor, administrator or other legal representative of an owner who has died shall succeed to all the rights of such owner.").

85.     Plaintiffs were the only persons with the capacity and right to give instructions to the State of Israel or its agents regarding payment of the First Bond.

86.     As the sole heirs of the Estate of Manuel Jacubovich, and having succeeded to all rights of the Estate of Manuel Jacubovich with respect to the First Bond, Plaintiffs were entitled to payment of the $5.425 million in proceeds of the First Bond, plus all interest accrued before the redemption of the First Bond and all interest paid upon the redemption of the First Bond.  *See id.*

87.     The State of Israel and Computershare breached the Fiscal Agency Agreement and the First Bond in: (a) following payment instructions as to the First Bond from a party other than Plaintiffs; and (b) failing to pay Plaintiffs the $5.425 million in proceeds of the First Bond, plus at least $110,670.00 in interest, including, but not limited to, all interest payments paid before the redemption of the First Bond and all interest payments paid upon the redemption of the First Bond.

88.     Upon information and belief, Computershare breached the Fiscal Agency Agreement and the First Bond by failing to notify the State of Israel and DCI of the "problematic

or questionable" nature of the redemption of the First Bond, (*see* Ex. A (Fiscal Agency Agreement), § 6.2(f)), including that: (a) instructions for the payment of the proceeds of the First Bond came from Jaime Jacubovich, who could not have presented proof that he was an executor, administrator, or other legal representative of the Estate of Manuel Jacubovich or proof that he was an heir of the Estate of Manuel Jacubovich; and (b) the instructions provided by Jaime Jacubovich were to pay the funds into a Panamanian bank account held in the name of E.M.J., S.A., (ESTATE OF MANUEL JACUBOVICH), rather than in the name of the Estate of Manuel Jacubovich or Plaintiffs, the sole heirs of the Estate of Manuel Jacubovich.

89.    As a direct and proximate result of the State of Israel's and Computershare's breaches of the Fiscal Agency Agreement and of the First Bond, Plaintiffs have suffered substantial damages, including loss of $5.425 million in proceeds of the First Bond and loss of at least $110,670.00 in accrued interest on the First Bond.

90.    The State of Israel and Computershare are therefore liable to Plaintiffs for breach of contract with respect to the Fiscal Agency Agreement and the First Bond.

91.    Based on the foregoing, Plaintiffs are entitled to damages not less than the amount of $5.425 million, plus at least $110,670.00 in interest, including, but not limited to, all interest paid before the redemption of the First Bond and all interest paid upon the redemption of the First Bond, plus any other damages as may be established at trial.

## THIRD COUNT
### (Breach of the Implied Covenant of Good Faith and Fair Dealing – First Bond)

92.    Plaintiffs repeat and reallege Paragraphs "1" through "91" as if more fully set forth herein.

93.     The First Bond was offered to the public and issued to the Estate of Manuel Jacubovich by the State of Israel.

94.     The First Bond is a State of Israel Jubilee Fixed Rate Bond (Seventh Series).

95.     The Fiscal Agency Agreement and "Form of Definitive Bonds" govern State of Israel Jubilee Fixed Rate Bonds (Seventh Series).

96.     The Fiscal Agency Agreement and "Form of Definitive Bonds" govern the First Bond.

97.     The First Bond is "substantially in the form" of the "Form of Definitive Bonds," and the terms set forth in the "Form of Definitive Bonds" are "expressly incorporated into and made a part of" the First Bond.  Ex. A (Fiscal Agency Agreement), § 2.3(b).

98.     The Fiscal Agency Agreement and the First Bond were, at all relevant times, valid and enforceable contracts.

99.     The Fiscal Agency Agreement and the First Bond carry with them an implied covenant of good faith and fair dealing.

100.     Jaime Jacubovich engaged in a scheme to deprive Plaintiffs of their rights under the First Bond.

101.     The State of Israel and Computershare breached the implied covenant of good faith and fair dealing in colluding and/or conspiring with Jaime Jacubovich in his scheme to deprive Plaintiffs of their rights under the First Bond by accepting and following his instructions regarding the redemption and payment of the First Bond, plus interest, despite the fact that he is not an heir of the Estate of Manuel Jacubovich.

102.     The State of Israel breached the implied covenant of good faith and fair dealing in, upon information and belief, colluding and/or conspiring with Jaime Jacubovich in his

scheme to deprive Plaintiffs of their rights under the First Bond by accepting and following his instructions regarding the redemption and payment of the First Bond due to Jaime Jacubovich's personal and/or professional affiliations with DCI, IBI, and/or various Israeli officials.

103.    The State of Israel and Computershare breached the implied covenant of good faith and fair dealing in facilitating the wiring of the proceeds of the First Bond to E.M.J., S.A. (ESTATE OF MANUEL JACUBOVICH) – a corporate entity created and controlled by Jaime Jacubovich – in order to deprive Plaintiffs of their rights under the First Bond.

104.    The State of Israel and Computershare breached the implied covenant of good faith and fair dealing in, upon information and belief, failing to follow their standard policies and procedures in permitting Jaime Jacubovich to give instructions for the redemption and payment of the First Bond.

105.    The State of Israel and Computershare breached the implied covenant of good faith and fair dealing in, upon information and belief, not requiring Jaime Jacubovich to present any documentation showing that he is an heir of the Estate of Manuel Jacubovich before permitting him to give instructions for the redemption and payment of the First Bond.

106.    This course of conduct by the State of Israel and Computershare deprived Plaintiffs of their rights – as sole heirs of the Estate of Manuel Jacubovich – to receive the benefits of the First Bond.

107.    This course of conduct by the State of Israel and Computershare is inconsistent with the reasonable and justified expectations of Plaintiffs and other holders of bonds issued by the State of Israel.

108.    This course of conduct by the State of Israel and Computershare deprived Plaintiffs of gains that they would have received or earned if in 2014, when the First Bond matured, they invested the amounts paid under the First Bond, as they had intended.

109.    The State of Israel and Computershare are therefore liable to Plaintiffs for breach of the implied covenant of good faith and fair dealing.

110.    Based on the foregoing, Plaintiffs are entitled to damages in an amount to be determined at trial.

## FOURTH COUNT
### (Breach of Contract – Second Bond)

111.    Plaintiffs repeat and reallege Paragraphs "1" through "110" as if more fully set forth herein.

112.    The Second Bond was offered to the public and issued to the Estate of Manuel Jacubovich by the State of Israel.

113.    The Estate of Manuel Jacubovich paid valuable consideration in the amount of $4.94 million for the Second Bond.

114.    The Fiscal Agency Agreement and "Form of Definitive Bonds" govern State of Israel Jubilee Fixed Rate Bonds (Seventh Series).

115.    The Second Bond is a State of Israel Jubilee Fixed Rate Bond (Seventh Series.)

116.    The Fiscal Agency Agreement and "Form of Definitive Bonds" govern the Second Bond.

117.    The Second Bond is "substantially in the form" of the "Form of Definitive Bonds," and the terms set forth in the "Form of Definitive Bonds" are "expressly incorporated into and made a part of" the Second Bond.  Ex. A (Fiscal Agency Agreement), § 2.3(b).

118.     The Fiscal Agency Agreement and the Second Bond were, at all relevant times, valid and enforceable contracts.

119.     At the conclusion of an Argentine probate proceeding, in 2011, the Argentine court deemed Plaintiffs the sole heirs of the Estate of Manuel Jacubovich.

120.     As the sole heirs of the Estate of Manuel Jacubovich, Plaintiffs succeeded to all rights of the Estate of Manuel Jacubovich with respect to the Second Bond.  *See* Ex. A (Fiscal Agency Agreement), § 2.4(g) ("The executor, administrator or other legal representative of an owner who has died shall succeed to all the rights of such owner.").

121.     As the sole heirs of the Estate of Manuel Jacubovich, and having succeeded to all rights of the Estate of Manuel Jacubovich with respect to the Second Bond, Plaintiffs were entitled to payment of the $4.94 million in proceeds of the Second Bond, plus all interest accrued before the redemption of the Second Bond and all interest paid upon the redemption of the Second Bond.  *See id.*

122.     During the period between July 1, 2012 and May 1, 2014, the State of Israel and Computershare breached the Fiscal Agency Agreement and the Second Bond by wrongly paying at least $67,002.64 in interest payments which accrued under the Second Bond to a party (or parties) other than Plaintiffs.

123.     As a direct and proximate result of the State of Israel's and Computershare's breach of the Fiscal Agency Agreement and of the Second Bond, Plaintiffs have suffered substantial damages, including loss of at least $67,002.64 in accrued interest on the Second Bond.

124.     The State of Israel and Computershare are therefore liable to Plaintiffs for breach of contract with respect to the Fiscal Agency Agreement and the Second Bond.

125.     Based on the foregoing, Plaintiffs are entitled to damages not less than the amount of $67,002.64, plus interest as allowed by law, plus any other damages as may be established at trial.

## FIFTH COUNT
### (Breach of the Implied Covenant of Good Faith and Fair Dealing – Second Bond)

126.     Plaintiffs repeat and reallege Paragraphs "1" through "125" as if more fully set forth herein.

127.     The Second Bond was offered to the public and issued to the Estate of Manuel Jacubovich by the State of Israel.

128.     The Second Bond is a State of Israel Jubilee Fixed Rate Bond (Seventh Series).

129.     The Fiscal Agency Agreement and "Form of Definitive Bonds" govern State of Israel Jubilee Fixed Rate Bonds (Seventh Series).

130.     The Fiscal Agency Agreement and "Form of Definitive Bonds" govern the Second Bond.

131.     The Second Bond is "substantially in the form" of the "Form of Definitive Bonds," and the terms set forth in the "Form of Definitive Bonds" are "expressly incorporated into and made a part of" the Second Bond.  Ex. A (Fiscal Agency Agreement), § 2.3(b).

132.     The Fiscal Agency Agreement and Second Bond were, at all relevant times, valid and enforceable contracts.

133.     The Fiscal Agency Agreement and the Second Bond carry with them an implied covenant of good faith and fair dealing.

134.     Jaime Jacubovich engaged in a scheme to deprive Plaintiffs of their rights under the Second Bond.

135.    The State of Israel and Computershare breached the implied covenant of good faith and fair dealing in colluding and/or conspiring with Jaime Jacubovich in his scheme to deprive Plaintiffs of their rights under the Second Bond by, upon information and belief, delivering $67,002.64 in interest payments to Jaime Jacubovich as if he were the legal representative of the Estate of Manuel Jacubovich, despite the fact that he had no evidence that he was the legal representative of the Estate of Manuel Jacubovich.

136.    Upon information and belief, the State of Israel and Computershare breached the implied covenant of good faith and fair dealing in failing to follow their standard policies and procedures in paying interest payments which accrued under the Second Bond to Jaime Jacubovich – who is not an heir of the Estate of Manuel Jacubovich.

137.    This course of conduct by the State of Israel and Computershare deprived Plaintiffs of their rights – as sole heirs of the Estate of Manuel Jacubovich – to receive the benefits of the Second Bond.

138.    This course of conduct by the State of Israel and Computershare is inconsistent with the reasonable and justified expectations of Plaintiffs and other holders of bonds issued by the State of Israel.

139.    This course of conduct by the State of Israel and Computershare deprived Plaintiffs of gains that they would have received or earned if they had invested the interest payments paid under the Second Bond in 2012 and 2013, prior to the redemption of the Second Bond.  Plaintiffs have invested the proceeds of the Second Bond which they did receive and they would have done the same as to the interest payments that the State of Israel and Computershare failed to pay them.

140.     The State of Israel and Computershare are therefore liable to Plaintiffs for breach of the implied covenant of good faith and fair dealing.

141.     Based on the foregoing, Plaintiffs are entitled to damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

a.     Enter Judgment in Plaintiffs' favor on all counts:

b.     On the First Count, declare that under the terms of the First Bond, Plaintiffs – as the sole heirs of the Estate of Manuel Jacubovich – succeeded to all rights of the Estate of Manuel Jacubovich with respect to the First Bond and are entitled to payment of the $5.425 million in proceeds of the First Bond, plus at least $110,670.00 in interest, including, but not limited to, all interest payments paid before the redemption of the First Bond and all interest paid upon the redemption of the First Bond to any party (or parties) other than Plaintiffs, plus any other damages as may be established at trial;

c.     On the Second Count, award Plaintiffs damages not less than the amount of $5.425 million, plus at least $110,670.00 in interest, including, but not limited to, all interest paid before the redemption of the First Bond and all interest paid upon the redemption of the First Bond, for breach of contract by the State of Israel and Computershare with respect to the Fiscal Agency and the First Bond, plus any other damages as may be established at trial;

d.     On the Third Count, award Plaintiffs damages, in an amount to be determined at trial, for breach of the implied covenant of good faith and fair dealing by the State of Israel and Computershare with respect to the Fiscal Agency Agreement and the First Bond;

e.    On the Fourth Count, award Plaintiffs damages not less than the amount of

$67,002.64, plus interest as allowed by law, for breach of contract by the State of Israel and

Computershare with respect to the Fiscal Agency Agreement and the Second Bond, plus any

other damages as may be established at trial;

f.    On the Fifth Count,  award Plaintiffs damages, in an amount to be determined at

trial, for breach of the implied covenant of good faith and fair dealing by the State of Israel and

Computershare with respect to the Fiscal Agency Agreement and the Second Bond;

g.    Direct the State of Israel and Computershare to pay Plaintiffs' attorneys' fees,

costs, and disbursements of this action; and

h.    Award Plaintiffs any such other and further relief as this Court may deem just and

proper.


Dated: April 12, 2018                                     **FOX HORAN & CAMERINI LLP**
       New York, New York

                                             By:    _____
                                                    Kathleen M. Kundar, Esq.
                                                    Jami L. Mevorah, Esq.
                                                    825 Third Avenue, 12th Floor
                                                    New York, New York 10022
                                                    Tel.: (212) 480-4800
                                                    Fax: (212) 269-2383
                                                    Email: kmkundar@foxlex.com
                                                    Email: jmevorah@foxlex.com

                                                    *Attorneys for Plaintiffs*

## VERIFICATION

I, Nicole Sofia Jacubovich, am a Plaintiff in this action. I have read the foregoing Verified Complaint and know the contents thereof. I certify that the contents are true based on my own knowledge or based on documents I have seen and information reported to me, which I believe to be true.   Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April ____12____, 2018
Paris, France

_____
Nicole Sofia Jacubovich

1

## VERIFICATION

I, Calanit Diva Jacubovich, am a Plaintiff in this action.  I have read the foregoing Verified Complaint and know the contents thereof.  I certify that the contents are true based on my own knowledge or based on documents I have seen and information reported to me, which I believe to be true.   Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 16, 2018
Buenos Aires, Argentina

Calanit Diva Jacubovich

1