UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICOLE SOFIA JACUBOVICH and CALANIT DIVA JACUBOVICH,<br><br>                         Plaintiffs,<br>            -against-<br><br>THE STATE OF ISRAEL, COMPUTERSHARE INC., and  COMPUTERSHARE TRUST COMPANY, N.A.,<br><br>                         Defendants. | Case No. 1:18-cv-03326-NRB |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THE STATE OF ISRAEL'S MOTION TO DISMISS THE AMENDED COMPLAINT**

ARNOLD & PORTER KAYE SCHOLER LLP

250 West 55th Street
New York, NY  10019-9710
Tel.:  (212) 836-8000
Fax:  (212) 836-8689

*Attorneys for Defendant the State of Israel*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ................................................................................................................... 3

A.    The Argentine Estates ............................................................................................. 3

B.    Procedural History ................................................................................................... 5

C.    The Fiscal Agency Agreements ............................................................................... 7

D.    The U.S. Prospectus ................................................................................................ 8

ARGUMENT ....................................................................................................................... 10

I.    The Amended Complaint Should Be Dismissed for Lack of Subject Matter and Personal Jurisdiction ............................................................................................... 10

II.   The Amended Complaint Should be Dismissed under the Doctrine of *Forum Non Conveniens* ............................................................................................................... 13

    A.    The Forum-Selection Clause in the IFAA  Was Reasonably Communicated to Plaintiffs ................................................................................. 14

    B.    The Forum-Selection Clause Is Mandatory ................................................. 16

    C.    The Parties and Claims Are Subject to the Forum-Selection Clause.................. 17

    D.    Plaintiffs Cannot Make a Sufficiently Strong Showing that Enforcement of the Mandatory Forum-Selection Clause Would Be Unreasonable or Unjust ....... 18

III.  The Amended Complaint Should Be Dismissed Because Plaintiffs Lack Standing ........ 20

IV.   The Court Should Dismiss for Failure to State a Claim ................................................. 22

    A.    Plaintiffs Have Failed to State a Claim for Breach of Contract (Counts II, IV) ............................................................................................................... 22

    B.    Plaintiffs Have Failed to State a Claim for Declaratory Judgment because Count VII is Vague and Conclusory ................................................................ 23

CONCLUSION .................................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

*Akers Biosciences, Inc. v. Martin*,
    No. 14–cv–8241, 2015 WL 1054971 (S.D.N.Y. Mar. 10, 2015) ...........................................18

*Amto, LLC v. Bedford Asset Mgmt., LLC*,
    168 F.Supp.3d 556 (S.D.N.Y. Mar. 10, 2016) ................................................................17, 21

*Arch Trading Corp. v. Republic of Ecuador*,
    839 F.3d 193 (2d Cir. 2016)..............................................................................................10

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989).........................................................................................................10

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
    571 U.S. 49 (2013)................................................................................................13, 18, 19

*Cargill Int'l S.A. v. M/T Pavel Dybenko*,
    991 F.2d 1012 (2d Cir. 1993)......................................................................................10, 11

*Eaton Vance Mgmt. v. Forstmann Leff Assocs., LLC*,
    No. 06 CIV.1510 WHP, 2006 WL 2331009 (S.D.N.Y. Aug. 11, 2006) ...........................19, 20

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
    375 F.3d 168 (2d Cir. 2004)..............................................................................................22

*Expedition Helicopters Inc. v. Honeywell Inc.*
    (2010), 100 O.R.3d 241, Can.Ont.C.A. ..............................................................................17

*Goldstein v. Pataki*,
    516 F.3d 50 (2d Cir. 2008)................................................................................................22

*In re Bigler's Estate*,
    35 N.Y.S.2d 658 (Sur. Ct. 1942).......................................................................................20

*Koch v. Christie's Int'l PLC*,
    699 F.3d 141 (2d Cir. 2012)..............................................................................................22

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972).............................................................................................................18

*Magi XXI, Inc. v. Stato Della Città del Vaticano*,
    818 F. Supp. 2d 597 (E.D.N.Y. 2011) ...............................................................................15

*Martinez v. Bloomberg LP*,
    740 F.3d 211 (2d Cir. 2014) ........................................................................................ *passim*

*Novatrax Int'l Inc. v. Hagele Landtechnik GmbH*
    (2016), 2016 ONCA 771, Can.Ont.C.A ................................................................. 17

*Pereira v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
    No. 04 CIV. 1134 (LTS), 2006 WL 1982789 (S.D.N.Y. July 12, 2006) ................. 4

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ................................................................................................. 18

*RedHawk Holdings Corp. v. Craig Invs., LLC*,
    No. 15 CIV. 9127 (CM), 2016 WL 6143355 (S.D.N.Y. Oct. 19, 2016) ................. 15

*Robinson v. Gov't of Malaysia*,
    269 F.3d 133 (2d Cir. 2001) ................................................................................... 10

*Roby v. Corp. of Lloyd's*,
    996 F.2d 1353 (2d Cir. 1993) ................................................................................. 19

*Roistacher v. Bondi*,
    624 Fed.Appx. 20 (2d Cir. 2015) ........................................................................... 20

*Sick Kids (Need) Involved People of New York, Inc. v. 1561599 Ontario, Inc.*,
    No. 15 CIV. 3756 RWS, 2015 WL 5672042 (S.D.N.Y. Sept. 25, 2015) ......... 16, 17

*Simms v. City of New York*,
    480 F. App'x 627 (2d Cir. 2012) ............................................................................ 22

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008) ..................................................................................... 4

*Ujvari v. 1stdibs.com, Inc.*,
    No. 16 CIV. 2216 (PGG), 2017 WL 4082309 (S.D.N.Y. Sept. 13, 2017) ............. 15

*Virtual Countries, Inc. v. Republic of South Africa*,
    300 F.3d 230 (2d Cir. 2002) ........................................................................ 10, 11, 12

## **Statutes**

28 U.S.C. § 1782 ........................................................................................................... 5, 6

Fed. R. Civ. P. 12(b)(1) ................................................................................................... 12

Fed. R. Civ. P. 12(b)(2) ................................................................................................ 1, 12

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 1, 22

Fed. R. Civ. P. 12(b)(7)...................................................................................................1

Foreign Sovereign Immunities Act of 1976, Pub. L. No. 94–583, 90 Stat. 2891
    (codified at 28 U.S.C. §§ 1330; 1332(a)(2)–1332(a)(4); 1391(f); 1441(d); and
    1602–1611) ...........................................................................................1, 2, 3, 12

Defendant the State of Israel ("Israel") submits this memorandum of law in support of its motion to dismiss plaintiffs Nicole Sofia and Calanit Diva Jacubovich's (collectively, "Plaintiffs") amended complaint filed on May 25, 2018 in its entirety, pursuant to: (i) Federal Rule of Civil Procedure ("FRCP") 12(b)(1) and 28 U.S.C. § 1330(a) for lack of subject matter jurisdiction; (ii) FRCP 12(b)(2) and 28 U.S.C. § 1330(b) for lack of personal jurisdiction; (iii) FRCP 12(b)(6) for failure to state a claim; (iv) FRCP 12(b)(7) for failure to join an indispensable party; (v) the doctrine of *forum non conveniens*; and (vi) for lack of standing.[1]

## PRELIMINARY STATEMENT

At their core, Plaintiffs' allegations represent an Argentinian family squabble concerning ownership of the proceeds of multiple Israeli bonds bought outside of the United States that have been paid in full since 2014.  Plaintiffs, who purport to be the sole heirs to the estate of their late great-uncle pursuant to a 2011 Argentine probate proceeding, allege that their grandfather Jaime Jacubovich improperly received the proceeds of certain Israeli bonds (payments to which Plaintiffs allege to be entitled).  It is undisputed that Israel, through its fiscal agent, caused the at-issue bonds to be paid in full to the registered bondholder(s) when the bonds matured.  Through this action, Plaintiffs seek to cause Israel to pay out twice on certain bonds. Israel opposes any such resolution.  Further, Plaintiffs have inexplicably not named Jaime Jacubovich as a party to this action notwithstanding that Plaintiffs are currently pursuing an action regarding these same bonds against him in Argentina.  The potential for inconsistent rulings and duplicative recovery by Plaintiffs looms large here.

---

[1] Defendants Computershare Inc. and Computershare Trust Company, N.A. (collectively, the "Computershare Defendants" and with Israel, "Defendants") are also moving to dismiss the amended complaint in its entirety.  Israel joins in the following arguments raised by the Computershare Defendants and incorporates them by reference herein:  (i) Plaintiffs' claims should be dismissed for failure to join Jaime Jacubovich as a necessary party (Point II); and (ii) the amended complaint should be dismissed for failure to state a claim (Points I(A)(2)-(3), (B)-(D)).

Through this action, Plaintiffs impermissibly seek to deprive Israel of its sovereign immunity by basing their claims upon an agreement and a bond prospectus that apply to Israeli bonds sold within the United States and not to international bond sales (*i.e.*, the bonds at issue in this litigation).  Because neither document is applicable here, Plaintiffs sole assertion that Israel purportedly waived its rights under the Foreign Sovereign Immunities Act of 1976[2] fails.  *See* Verified Amended Complaint ("Am. Compl.") ¶ 9.  The amended complaint should therefore be dismissed for lack of subject matter and personal jurisdiction.  *See infra* Point I.

Additionally, although Plaintiffs are not parties to any fiscal agency agreement, the only contract that is even arguably relevant here—because it pertains to international Israeli bond sales—unambiguously provides that Israel has waived its sovereign immunity as to only claims brought in Ontario, Canada, that all such claims shall be brought in Ontario, and that Canadian law applies.  In the amended complaint, Plaintiffs seek to maintain claims under a fiscal agency agreement, and therefore, they should be held to the terms of the only arguably relevant fiscal agency agreement.  Accordingly, Plaintiff's claims should be dismissed under the doctrine of *forum non conveniens*.  *See infra* Point II.

Further, accepting as true Plaintiffs' allegations that they are the sole heirs of the Estate of Manuel Jacubovich (the "Estate") and that all others, such as Jaime Jacubovich, lacked authority to bind the Estate, then Plaintiffs lack standing to bring suit regarding the bonds because there is no privity between Israel and the Estate.  *See infra* Point III.  This is true regardless of who purchased the bonds because the only people who could bind the Estate—Plaintiffs—indisputably did not purchase the bonds.  Alternatively,  if Jamie Jacubovich did have authority to bind the Estate, Plaintiffs' breach of contract claims fail because Defendants

---

[2] Pub. L. No. 94–583, 90 Stat. 2891 (codified at 28 U.S.C. §§ 1330; 1332(a)(2)–1332(a)(4); 1391(f); 1441(d); and 1602–1611) (the "FSIA").

fully performed on the bonds by making payments pursuant to the Estate's instructions received through Jaime, a fact that is beyond dispute.  *See infra* Point IV.  Plaintiffs' remaining allegations should likewise be dismissed because they are at best, conclusory and vague.  *Id.*

Accordingly, Israel respectfully requests that this Court grant its motion and dismiss the amended complaint in its entirety.

## BACKGROUND

### A.    The Argentine Estates

On November 19, 2010, Plaintiffs' great-uncle, Manuel Jacubovich, died and left a will naming his nephew, Plaintiffs' father, Abel Jacubovich, as sole heir of his estate.  *See* Am. Compl. ¶ 40.  Shortly thereafter, on December 21, 2010, Abel died intestate.  *Id.* ¶ 41.  Plaintiffs allege that in February 2011, an Argentine probate court purportedly deemed Plaintiffs to be sole heirs of both estates.  *Id.* ¶¶ 42-46.  They claim, as a result, that Jaime Jacubovich, Abel's father and Manuel's brother, was never the heir, executor, administrator, or other legal representative of either the Estate of Manuel Jacubovich or of the Estate of Abel Jacubovich.  *Id.* ¶¶ 47-48.

This case relates to two 2-year State of Israel Jubilee Fixed Rate Bonds (Seventh Series) purchased in the name of the Estate of Manuel Jacubovich (*i.e.*, the "Estate") on May 1 and June 1, 2012, respectively (the "First Bond" and "Second Bond," collectively, the "Bonds"). *Id.* ¶¶ 49-52.  The First Bond was in the amount of $5.425 million and the Second Bond was in the amount of $4.94 million.  *Id.* ¶¶ 1, 49-52.  Although Plaintiffs' claims are vague in many regards, it is evident that a reasonable inference of Plaintiffs' allegations is that Jaime Jacubovich—Plaintiffs' grandfather—arranged for purchase of the Bonds in the name of the Estate:  (i) the Bonds were purchased after Plaintiffs were purportedly deemed to be the sole heirs of the Estate; (ii) before Plaintiffs provided any evidence that they were the sole heirs of the Estate, payments on the bonds were made to the Estate pursuant to the instructions received

from Jaime Jacubovich on the Estate's behalf; and (iii) Jaime Jacubovich controlled the account to which the payments were made. *Id.* ¶¶ 57-58, 63-66.[3]

Plaintiffs allege that when the First Bond matured on May 1, 2014, consistent with Jaime Jacubovich's wire instructions, Israel through its fiscal agent[4] wired the proceeds to a Panamanian bank account held in the name of "E.M.J., S.A. (ESTATE OF MANUEL JACUBOVICH)," which was created and controlled by Jaime Jacubovich. *See id.* ¶¶ 54, 56, 63-64. When the Second Bond matured on July 1, 2014, Plaintiffs allege their receipt of checks for the maturity ($4.94 million) and final interest payment ($6,109.36).[5] *Id.* ¶¶ 58-59. Plaintiffs

---

[3] In any event, it is well-established that on a motion to dismiss, the Court may consider matters of which judicial notice may be taken, including filings in prior litigation. *See, e.g.*, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *Pereira v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 04 CIV. 1134 (LTS), 2006 WL 1982789, at *2 (S.D.N.Y. July 12, 2006). By the time that they filed the instant action, Plaintiffs had already brought suit in Argentina against Jaime Jacubovich to recover the proceeds from the First Bond. *See Gonzolo Manuel Vergara, et al. v. Jaime Moises Jacubovich, et al.*, Case No. 49079/2016. Plaintiffs were also aware that Jaime Jacubovich had commenced a suit in Panama to recover on the Second Bond. *See* Am. Compl. ¶ 156; *E.M.J. S.A./Estate of Manuel Jacubovich v. Computershare Inc. et al.*, Case No. 466-16. In the Panamanian proceeding, which concerned the Second Bond only, Jaime Jacubovich has admitted that he purchased the Second Bond. *See* Feb. 21, 2017 Solicitud de Asistencia Judicial Intervention (Petition for International Judicial Assistance) ("Entre el 25 y 27 de junio de 2012, nuestra representada realize una inversion en Bonos del Estado de Israel por la suma de CUATRO MILLIONES NOVECIENTOS CUARENTA MIL DOLARES DE LOS ESTADOS UNIDOS DE AMERICA (US $ 4,940,000.00), a traves de y/o con la Sociedad DEVELOPMENT CORPORATION FOR ISRAEL (ISRAEL BONDS) y/o la sociedad COMPUTERSHARE INC.") ("Between the 25th and 27th of June 2012, our client performed an investment in State Bonds of Israel for the amount of FOUR MILLION NINE HUNDRED FORTY THOUSAND DOLLARS OF THE UNITED STATES OF AMERICA (US$4,940,000.00) through and/or with the corporation DEVELOPMENT FOR ISREAL, (ISRAEL BONDS) and/or COMPUTERSHARE INC.").

[4] Plaintiffs allege that the proceeds of the Bonds were paid by Israel's fiscal agent, the Computershare Defendants. *See* Am. Compl. ¶¶ 2, 10. As set forth below in more detail, Computershare Trust Company of Canada ("CTCC"), which is not a defendant in this action, served as the fiscal agent for the Bonds because they were sold outside of the United States and Canada by Israel Bonds International ("IBI") to non-U.S. bondholders. *See* Declaration of Andrea Malangone in Support of Defendants' Motion to Dismiss the Complaint, dated August 1, 2018 ("Malangone Decl.") ¶¶ 7-8.

[5] The identity of the heirs of Estate is a matter solely within the purview of the Argentine probate courts. Any argument by Plaintiffs that they are the "sole and rightful heirs" of the Estate by virtue of the fact that they received the maturity and final interest payment for the Second Bond is incorrect, conclusory at best, and should be rejected. *See, e.g.*, Am. Compl. ¶ 60.

claim that since May 2014, they have demanded payment of the proceeds of the First Bond from Israel, despite the fact that Israel, through its fiscal agent, had already paid out all of the proceeds of both Bonds. *Id.* ¶¶ 61, 67. [6]

### B.   Procedural History

In the intervening years, both Plaintiffs and their grandfather, Jaime Jacubovich, have been involved in parallel, related proceedings in three separate countries to recover the Bond proceeds that each believes is rightfully theirs.  Through their most recent foray before this Court, Plaintiffs have engineered a situation in which they may achieve inconsistent results (and double payment) or at minimum, get as many bites at the proverbial apple as possible.

*Argentine Proceeding*:  On August 22, 2016, Plaintiffs filed a criminal complaint against Jaime Jacubovich, Jaime's daughter, and Jaime's grandson in Argentina.  *See Gonzolo Manuel Vergara, et al. v. Jaime Moises Jacubovich, et al.*, Case No. 49079/2016.  In that action, Plaintiffs allege that they are the rightful heirs to and should have received the proceeds of the First Bond and that instead, Jaime Jacubovich misrepresented himself as heir of the Estate to IBI and redeemed and absconded with the proceeds.  *See* Case No. 1:17-mc-00489-KPF, ECF No. 9, Mem. of Law in Supp. of Appl. for an Order pursuant to 28 U.S.C. § 1782 at 2.

*Panamanian Proceeding*:  On or about 2016, E.M.J. S.A./Estate of Manuel Jacubovich (a company established and controlled by Jaime Jacubovich) filed suit against Computershare Inc. and the Development Corporation for Israel ("DCI") in Panama seeking payment of the proceeds of the Second Bond, *i.e.*, $4.94 million plus interest, costs, and legal expenses.  *See  E.M.J. S.A./Estate of Manuel Jacubovich v. Computershare Inc. et al.*, Case No. 466-16.  On June 15, 2018, the court granted Computershare Inc.'s motion to dismiss for lack of

---

[6] The amended complaint contains only vague and conclusory allegations  related to other bonds purportedly held in the name of Manuel Jacubovich or the Estate.  *Id.* ¶¶ 68-74, 158-64, 165-71.

jurisdiction and annulled the proceedings (*see* Order No. 1112) and E.M.J. S.A./Estate of Manuel Jacubovich appealed.

*United States 28 U.S.C. § 1782 Action*:  On December 6, 2017, Plaintiffs filed an *ex parte* motion pursuant to 28 U.S.C. § 1782 to issue subpoenas directing Computershare Inc., DCI,  and the Israeli Ministry of Finance, Bond Department, to produce documents and give testimony for use in the criminal proceeding in Argentina, which the court subsequently granted.  *See In the Matter of the Application of Nicole Sofia Jacubovich and Calanit Diva Jacubovich for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782*, Case No. 1:17-mc-00489-KPF (S.D.N.Y.) (Failla, J.), ECF No. 15.  Plaintiffs filed the instant action while the parties were negotiating a protective order in the § 1782 action.  The Ministry of Finance, DCI, and Computershare Inc. have produced documents and depositions of their designees have taken place.

On April 17, 2018, Plaintiffs filed the instant action against Israel and the Computershare Defendants seeking three types of relief:  (i) a declaration that they succeeded to all of the rights of the Estate and are entitled to the proceeds of the First Bond, including interest paid before and upon redemption of that bond (Count I); (ii) breach of contract with respect to both Bonds (Counts II and IV); and (iii) breach of the implied covenant of good faith and fair dealing for both Bonds (Counts III and V).   DCI, IBI and Jaime Jacubovich are not named defendants but are referenced throughout the Complaint.  *See*, *e.g.*, Am. Compl. ¶¶ 2, 6, 17-19, 21,38, 39, 47-48, 63-64, 66-67.  On May 25, 2018, Plaintiffs filed an amended complaint, adding additional causes of action for (i) a declaration that Plaintiffs were properly paid the proceeds upon redemption of the Second Bond (Count VI); (ii) a declaration that Plaintiffs are entitled to certain "additional amounts" under the terms of bonds other than the First and Second Bonds

(Count VII; *see* Am. Comp. ¶¶ 68, 71-72, 162); and (iii) an accounting of bonds purchased by and payments made to Manuel Jacubovich or the Estate since January 1, 2010 (Count VIII).

      **C.**      **The Fiscal Agency Agreements**

Plaintiffs' claims rely upon  the Master Fiscal Agency Agreement, by and between Israel, Computershare Inc., and Computershare Trust Company, N.A., dated as of February 3, 2010 (the "US FAA").  *See* Am. Compl. Ex. A; *see, e.g.*, Am. Compl. ¶¶ 22, 23; *see also* Malangone Decl. ¶ 2.  By its express terms, the US FAA is not relevant here because it relates only to bonds sold in the United States by DCI, the exclusive broker and underwriter through which Israel sells bonds in the United States, and not to bonds sold outside of the U.S. (*i.e.*, the Bonds relevant in this action).  *See* Malangone Decl. ¶ 3.[7]  Pursuant to the US FAA, Computershare Defendants are appointed as fiscal agents only for those Israeli bonds sold through DCI in the United States to U.S. residents.  *Id.* ¶ 4.

Conversely, the international Master Fiscal Agency Agreement, by and between Israel and a different entity, Computershare Trust Company of Canada ("CTCC"),[8] also dated as of February 3, 2010 (the "IFAA"), applies to Israel bonds sold *outside* of the United States to *non-U.S.* residents—the Bonds at issue in this action.  *Id.* ¶ 5; Malangone Decl. Ex. 1, IFAA (filed under seal).  ███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████  Plaintiffs acknowledge that IBI is the

---

[7] Specifically, the US FAA applies to bonds issued by Israel through the "Financial Corporation," which is defined in in the US FAA as DCI.  *Id.*; *see* Compl. Ex. A, US FAA at 1 first WHEREAS clause (agreement only applies to bonds issued by Israel through the "Financial Corporation"), 3 ("Financial Corporation" is defined as DCI).

[8] CTCC is not a party to this action.

agent for bonds issued by Israel outside of the United States and Canada.  *See* Am. Compl. ¶ 19.

Pursuant to the IFAA, Israel ███████████████████████████████████

███████████████████████████  *See* Malangone Decl. Ex. 1, IFAA § 2.12(a).

Consistent with the IFAA, CTCC booked the Bonds on its register in Canada.  *See* Malangone

Decl. ¶¶ 8-9.

Importantly, the IFAA provides that all actions and proceedings arising out of the

agreement shall be brought in the courts of the province of Ontario, Canada, that Israel has

waived it sovereign immunity with respect to such claims brought in Ontario, and that Ontario

law governs:



*See* Malangone Decl. Ex. 1, IFAA § 9.10 (emphasis added).

**D.    The U.S. Prospectus**

Plaintiffs also allege that a prospectus (which they do not attach to the amended

complaint), dated as of December 15, 2010 (the "U.S. Prospectus"), applies to the Bonds.  *See*

Am. Compl. ¶¶ 6, 11.  This is incorrect.  The express terms of the U.S. Prospectus make clear

that it applies to only domestic sales by Israel's domestic broker, DCI.  Specifically, the U.S.

8

Prospectus identifies DCI as the "sole and exclusive underwriter of the bonds sold in the United States" and provides that the U.S. Prospectus is available on DCI's website. *See* September 7, 2018 Declaration of William Mulvey ("Mulvey Decl."), Ex. B, U.S. Prospectus Cover and at 7-8. In contrast, with respect to international sales, the U.S. Prospectus provides that, "Israel may sell the bonds outside of the United State through additional underwriters or dealers, as will be described in the applicable prospectus supplement." *Id.* at 7. For such international sales, IBI is identified as the "sole and exclusive underwriter of the bonds outside of the United States and Canada." *Id.* Importantly, the U.S. Prospectus also provides that "Prospectuses, Customer Information Forms and Investment Forms are available outside of the United States from the appropriate local underwriter." *Id*. at 8 (emphasis added).

The distinction between domestic and international bond sales described in the U.S. Prospectus aligns exactly with DCI's practices with respect to sharing information with customers and potential customers. DCI—Israel's United States underwriter—historically referred any potential customers who were not residents of the United States to the appropriate international broker (*i.e.*, IBI or Canada-Israel Securities Ltd. for sales in Canada). *See* Mulvey Decl. ¶¶ 6, 10. DCI does not engineer sales of bonds internationally or share U.S. Prospectuses with such customers. *See id* ¶¶ 4, 8-10. Indeed, the U.S. Prospectus was intended for use in connection with sales of State of Israel Jubilee Fixed Rate Bonds (Seventh Series) only in the United States through DCI. *See id.* ¶ 5. In any event, Plaintiffs do not allege that, and Israel is aware of no evidence to support any contention that, the U.S. Prospectus was ever used outside the United States in connection with the sale of a Seventh Series Jubilee bond, let alone that Jamie Jacubovich or any other representatives of the Estate ever saw it.

# ARGUMENT

## I.

## THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR
## LACK OF SUBJECT MATTER AND PERSONAL JURISDICTION

This Court lacks subject matter and personal jurisdiction over this action because Israel is a sovereign nation immune from suit under the FSIA, and Plaintiffs have failed to adequately plead an applicable exception to FSIA.

The FSIA is "the sole basis for obtaining jurisdiction over a foreign state in our courts." *Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 200 (2d Cir. 2016) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989)). "Under the FSIA, a foreign sovereign and its instrumentalities are immune from suit in the United States courts unless a specific statutorily defined exception applies. Absent such an exception, the immunity conferred by the FSIA strips courts of both subject matter and personal jurisdiction over the foreign state." *See Arch Trading Corp.*, 839 F.3d at 200 (internal citation and quotation marks omitted). "In the context of a 12(b)(1) challenge to jurisdiction under FSIA . . . the district court 'must look at the substance of the allegations' to determine whether one of the exceptions to FSIA's general exclusion of jurisdiction over foreign sovereigns applies." *See Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) (quoting *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1019 (2d Cir. 1993) ("[T]he district court must review the pleadings and any evidence before it, such as affidavits.")).

Questions of FSIA subject-matter jurisdiction are resolved through a three-part burden shifting framework:  (i) defendant must make a *prima facie* showing that it is a "foreign sovereign" under the FSIA; (ii) then "*the plaintiff* 'has the *burden of going forward* with evidence showing that, under exceptions to the FSIA, immunity should not be granted'"; and (iii)

the "ultimate burden of persuasion remains with the alleged foreign sovereign." *See Virtual*

*Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 241 (2d Cir. 2002) (emphasis original)

(quoting *Cargill*, 991 F.2d at 1016).

      First, it is uncontested that Israel is a foreign sovereign. *See* Am. Compl. ¶ 6.

Second, no exception to the FSIA applies because Plaintiffs fail in their attempts to invoke the

waiver exception of the FSIA by referencing the US FAA and the U.S. Prospectus. *See, e.g.*, *id.*

¶¶ 9, 31, 69; Am. Compl. Ex. A, US FAA § 9.10.  The US FAA is not relevant here because by

its express terms, it relates only to bonds sold domestically by DCI, and therefore, not to the

Bonds. *See* Malangone Decl. ¶¶ 3, 5, 7-8.  Indeed, the Bonds were registered by Computershare

Trust Company of Canada, *i.e.*, CTCC, on its register in Canada.  *Id.* ¶ 8.  CTCC served as fiscal

agent for the Bonds pursuant to the IFAA, a separate agreement.  *Id.* ¶¶ 8-9.[9]  Accordingly, any

waiver of sovereign immunity contained in the US FAA is inapplicable to the Bonds and

irrelevant to Plaintiffs' claims.  *See* Am. Compl., Ex. A § 9.10.  Under the IFAA, which does

apply to the Bonds, Israel has only waived its sovereign immunity for proceedings brought in

Ontario, Canada.  *See* Malangone Decl. Ex. 1, IFAA § 9.10.

      Further, the U.S. Prospectus does not apply to bond sales outside of the United

States.  *See* Mulvey Decl. ¶ 5, Ex. B, U.S. Prospectus at Prospectus Cover, 7, 8, S-1, S-3; *see*

*also* Malangone Decl. ¶¶ 5-10.  Assuming *arguendo* that the U.S. Prospectus applies to the

Bonds, which it does not, its purported limited waiver of sovereign immunity applies only to

instances where bondholders are capable of bringing claims in New York.[10]  Plaintiffs are not

---

    [9] Where the US FAA applies, Computershare Defendants register the bonds in Massachusetts.  *See* Am. Compl. Ex. A, US FAA § 2.12.  That rightfully did not happen here because the Bonds were sold internationally.  *See* Malangone Decl. ¶¶ 8-9.

    [10] The U.S. Prospectus contains the following: "Israel will irrevocably agree not to assert any defense based on immunity, including foreign sovereign immunity, from jurisdiction to which it might otherwise be entitled in any action arising out of or based on the

capable of bringing their claims in New York because as discussed in Section II, *infra*, the only

contract that they could even possibly invoke, the IFAA, contains a mandatory forum selection

clause directing that all claims arising out of that agreement be brought in Ontario, Canada.

Because Plaintiffs cannot bring their claims in New York, the limited waiver of sovereign

immunity in the U.S. Prospectus does not create jurisdiction here.  Plaintiffs, therefore, cannot

show that Israel has waived its sovereign immunity.  To find otherwise would serve only to

advantage Plaintiffs and unfairly prejudice Israel for Plaintiffs' presumably mistaken reliance

upon the wrong fiscal agency agreement.

      Finally, with respect to Plaintiffs' claims for "other amounts" allegedly due to

them (*see* Am. Compl. Counts VII and VIII), which appear to concern approximately 20

different bond offerings, Plaintiffs rely exclusively upon a conclusory allegation that Israel has

waived its sovereign immunity.  *See* Am. Comp. ¶¶ 68-69.  Conclusory allegations, without

more, are insufficient to satisfy Plaintiffs' burden under the FSIA.  *See, e.g.*, *Virtual Countries*,

300 F.3d at 241 (conclusory, "bald assertions of harm" were insufficient to satisfy plaintiffs'

burden of production of showing that an exception to sovereign immunity applied).

      Accordingly, the Court lacks original jurisdiction under 28 U.S.C. § 1330(a) and

the amended complaint should be dismissed for lack of subject matter and personal jurisdiction

pursuant to FRCP 12(b)(1) and (b)(2) and 28 U.S.C. § 1330(b).

---

terms of the bond which *may* be instituted by the owners of any bonds of any issue in any federal
court in the Southern District of New York, any state court in the City of New York or in any
competent court in Israel."  *See* Mulvey Decl., Ex. B, U.S. Prospectus at 8 (emphasis added).
This limited waiver of sovereign immunity corresponds with claims that are rightfully brought
pursuant to the US FAA.

## II.

### THE AMENDED COMPLAINT SHOULD BE DISMISSED UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*

In the amended complaint, Plaintiffs invoke the US FAA as grounds for their breach of contract claims and this Court's jurisdiction, *see, e.g.*, Am. Compl. ¶¶ 9, 22-36, 53, 69, 85-87, and although Israel challenges Plaintiffs standing to do so, Plaintiffs must live by the terms of the only potentially relevant fiscal agency agreement—the IFAA.  The IFAA unambiguously provides that, ███████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████         *See* Malangone Decl. Ex. 1,  IFAA § 9.10.  Plaintiffs have filed this action in violation of that mandatory forum-selection clause.  Plaintiffs cannot circumvent the express terms of the IFAA by incorrectly directing this Court to the US FAA. *See, e.g.*, Am. Compl. ¶¶ 11-15, 22-36.  This case should be dismissed on *forum non conveniens* grounds.

It is well-established that a party may not maintain a suit in federal court when the contract they invoke commits all parties to litigate in another jurisdiction, such as in a foreign jurisdiction.  *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 66 (2013) (holding that "appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*" and stating that "[i]n all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain"); *Martinez v. Bloomberg LP*, 740 F.3d 211, 219 (2d Cir. 2014) (strong federal public policy supporting the enforcement of forum selection clauses).  "In deciding a motion to dismiss for *forum non conveniens*, a district court normally relies solely on the pleadings and affidavits,

though it may order limited discovery." *See Martinez*, 740 F.3d at 216 (internal citation omitted).

The Second Circuit has established a four-part test for enforcement of a forum-selection clause.  Under *Phillips v. Audio Active Ltd.*, a court first considers whether the clause (i) was "reasonably communicated to the party resisting enforcement;" (ii) is mandatory rather than permissive; (iii) and encompasses "the claims and parties involved in the suit. . . ."  494 F.3d 378, 383 (2d Cir. 2007); *see also Martinez*, 740 F.3d at 217.  If all three prongs of this inquiry are met, the clause is presumptively enforceable.  *Id.*  Fourth, and finally, a court considers "whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching."  *Phillips*, 494 F.3d at 383-84 (internal quotation marks omitted).[11]

A.    The Forum-Selection Clause in the IFAA  Was Reasonably Communicated to Plaintiffs

Israel is aware of no relevant supporting precedent for the proposition that a party can maintain a claim for breach of a contract while simultaneously asserting that it should not be bound by the forum selection clause contained in the same contract because it was not adequately communicated.  To hold otherwise creates the potential for overlapping litigation and

---

[11] Where a contract contains a choice of law clause in addition to a forum selection clause, the court generally must apply the law selected in the choice of law clause to the "*interpretive* questions posed by parts two and three of the four-part framework," while applying federal law to determine whether the clause is enforceable.  *See Martinez*, 740 F.3d at 217-18; *Phillip*, 494 F.3d at 384.  The IFAA provides that the ███████████████████████████ ████████████████████████████████████████████████████ (*see* IFAA § 9.10).  Accordingly, in analyzing parts two and three, Ontario law applies.

conflicting rulings.[12]  Furthermore, the forum-selection clause here was reasonably communicated because it appears in the "standard section in the main body" of the IFAA (*see* Malangone Decl. Ex. 1, IFAA § 9.10), and was phrased in clear and unambiguous language. *See, e.g.*, *Ujvari v. 1stdibs.com, Inc.*, No. 16 CIV. 2216 (PGG), 2017 WL 4082309, at *8 (S.D.N.Y. Sept. 13, 2017) (citing *Magi XXI, Inc. v. Stato Della Città del Vaticano*, 818 F. Supp. 2d 597, 604-05 (E.D.N.Y. 2011) ("A forum selection clause is reasonably communicated if it is phrased in clear and unambiguous language.")).

Assuming *arguendo* that Plaintiffs allege a lack of awareness of the forum-selection clause in the IFAA, "even in the absence of awareness or direct communication of the forum selection clause, the non-signatory may nevertheless be bound if he is . . . 'closely related' to the signatory or the dispute that enforcement was reasonably foreseeable under the circumstances." *See, e.g.*, *RedHawk Holdings Corp. v. Craig Invs., LLC*, No. 15 CIV. 9127 (CM), 2016 WL 6143355, at *3 (S.D.N.Y. Oct. 19, 2016).  This "'closely related' test is necessarily satisfied where the defendant is a third-party beneficiary of the agreement, but that is not required." *Id.* at *4.  It is further satisfied where a non-signatory's "interest are completely derivative of and directly related to, if not predicated upon the signatory party's interests or conduct." *Id.* (internal quotation marks omitted).

This element is satisfied here.   Plaintiffs allege that as the sole beneficiaries of the Estate, they succeed to all of the rights to the Bonds under the US FAA.  *See* Am. Compl. ¶¶ 82-98, 118-133.  Notwithstanding that Plaintiffs direct this Court to the wrong fiscal agency agreement, Plaintiffs' pleadings are a concession that they are bound by the terms the fiscal

---

[12] Any action between Israel and CTCC relating to the Bonds (and facts) at issue here must, under the terms of the IFAA, be brought in Canada.  *See* Malangone Decl. Ex. 1, IFAA § 9.10.  This is true even if Plaintiff were permitted to maintain their claims in this Court.

agency agreement, if any, that applies because their claims are sufficiently related to and derivative of the interests and conduct of the parties to that agreement.  Stated differently, Plaintiffs simultaneously allege breach of contract under the US FAA and claim that this Court has jurisdiction over Israel by operation of that agreement despite the fact that they have not alleged that Jamie Jacubovich or any other representative of the Estate had actual knowledge of the existence of the US FAA, let alone its terms, when the Bonds were purchased in the name of the Estate.  *See, e.g.*, *id.* ¶¶ 9, 22-36, 53, 69. To the extent Plaintiffs can maintain a claim under any fiscal agent agreement, it is exclusively the IFAA.  *See supra* Point I.  Any argument that Plaintiffs should not be bound by the terms of the IFAA due to a lack of awareness should be given no weight because of Plaintiffs' attempted reliance on the US FAA.  To hold otherwise would unfairly prejudice Israel for Plaintiffs' error.

B.     The Forum-Selection Clause Is Mandatory

In a recent case in this Circuit, *Sick Kids (Need) Involved People of New York, Inc. v. 1561599 Ontario, Inc.*, No. 15 CIV. 3756 RWS, 2015 WL 5672042, at *3 (S.D.N.Y. Sept. 25, 2015), the court, applying Ontario law (*see supra* note 11; *see also Martinez*, 740 F.3d at 217-18), held that certain limiting language in a forum-selection directing that suits by a licensee be brought in Ontario was mandatory.  In relevant part, the forum-selection clause provided that: "[A]ny claim or action brought by the LICENSEE *shall be commenced in the courts of the Province of Ontario*." *Sick Kids*, 2015 WL 5672042, at *2-*3 (emphasis added).  The court reasoned that this clause made "Ontario jurisdiction exclusive for any lawsuit brought by the licensee," and held, therefore, that it was mandatory as to the licensee. *Id.* at *3.  The forum-selection clause at issue here is nearly identical and also mandatory. *See* IFAA § 9.10 █████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████ (emphasis added).

C.      The Parties and Claims Are Subject to the Forum-Selection Clause

The IFAA forum-selection clause is broad and inclusive, applying to ████████

███████████████████████████████████████████████████████

*See* Malangone Decl. Ex. 1, IFAA § 9.10 (emphasis added).  Plaintiffs' claims are plainly subject

to the IFAA forum selection clause.  Any argument to the contrary is belied by the procedural

history of this action.  In the amended complaint, Plaintiffs bring claims under the US FAA and

assert the forum selection clause therein.  *See, e.g.*, Am. Compl. ¶¶ 9, 22-36, 53, 69.  Now that

Plaintiffs' error has been corrected by Israel, Plaintiffs cannot credibly argue that the only

arguably relevant agreement—the IFAA—and its various provisions, including the forum

selection clause, do not apply.[13]  Finally, Ontario law strongly supports the enforcement of

forum-selection clauses.  *See Sick Kids*, 2015 WL 5672042, at *4 (citing *Expedition Helicopters

Inc. v. Honeywell Inc.* (2010), 100 O.R.3d 241, para. 24 Can.Ont.C.A.) ("A forum selection

clause in a commercial contract should be given effect."); *Novatrax Int'l Inc. v. Hagele

Landtechnik GmbH* (2016), 2016 ONCA 771, para. 5 Can.Ont.C.A (same); *Momentuous.ca

Corporation v. Canadian American Assoc. of Professional Baseball Ltd.*, 2010 ONCA 722, para.

41 Can.Ont.C.A. (same).

---

[13] Notwithstanding Israel's position that Plaintiffs lack standing to maintain claims under either the US FAA or the IFAA, *see  infra* Point III, the amended complaint should be dismissed so that it can be refiled in Ontario, Canada.  Plaintiffs' standing (or lack thereof) to raise claims under the IFAA should be adjudged by a Canadian court applying Canadian law. *See, e.g., Amto, LLC v. Bedford Asset Mgmt., LLC*, 168 F.Supp.3d 556, 571 (S.D.N.Y. Mar. 10, 2016).

D.    Plaintiffs Cannot Make a Sufficiently Strong Showing that Enforcement of the
      Mandatory Forum-Selection Clause Would Be Unreasonable or Unjust

Where a "forum clause was communicated to the resisting party, has mandatory

force and covers the claims and parties involved in the dispute, it is presumptively enforceable."

*See Phillips*, 494 F.3d at 383.  The Supreme Court has narrowly construed the showing that can

overcome that presumption to the following:  (1) the "incorporation [of the forum-selection

clauses into the agreement] was the result of fraud or overreaching; (2) the law to be applied in

the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy

of the forum" in which suit is brought; "or (4) trial in the selected forum will be so difficult and

inconvenient that the plaintiff effectively will be deprived of his day in court."  *Id.* at 392; *M/S*

*Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Martinez*,  740 F.3d at 228.  In other

words, Plaintiffs face a heavy burden in overcoming a presumptively valid forum selection

clause.  *See Akers Biosciences, Inc. v. Martin,* No. 14–cv–8241, 2015 WL 1054971, at *4

(S.D.N.Y. Mar. 10, 2015); *see also Atl. Marine*, 571 U.S. at 53 ("[A] valid forum-selection

clause [should be] given controlling weight in all but the most exceptional cases.") (internal

quotation marks omitted).

Moreover, the Supreme Court explained in *Atlantic Marine* that "private interest

factors" should not be considered when the district court evaluates a *forum non conveniens*

motion based on a contractual forum-selection clause:

> When parties agree to a forum-selection clause, they waive the right
> to challenge the preselected forum as inconvenient or less
> convenient for themselves or their witnesses, or for their pursuit of
> the litigation.  A court accordingly must deem the private-interest
> factors to weigh entirely in favor of the preselected forum.

*Atl. Marine*, 571 U.S. at 64.  As a result, the Court may consider only public-interest factors[14], of which the Supreme Court stated the following:

> Because those factors will rarely defeat a transfer motion, the practical result is that *forum-selection clauses should control except in unusual cases*.  Although it is 'conceivable in a particular case' that the district court 'would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause,'. . . such cases will not be common.

*Id.* (emphasis added).

Plaintiffs fall far short of this standard.  Plaintiffs have made no attempt to (nor can they) allege any "fraud or overreaching" or that the "law to be applied in the selected forum is fundamentally unfair."  In determining whether enforcement of a forum selection clause would "contravene[] a strong public policy of the forum," the Court relies on federal cases or statutes.  *See Bremen*, 407 U.S. at 15; *Martinez*, 740 F.3d at 228.  There is no public policy that weighs against enforcement of the clause here.  Indeed, the Second Circuit has held that "it is not enough that the foreign law or procedure merely be different or less favorable than that of the United States."  *Martinez*, 740 F.3d at 229 (shorter statute of limitations, unavailability of prevailing party attorney's fees, and cost of proceeding in U.K. did not constitute contravention of a strong public policy); *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) ("[I]t is not enough that the foreign law or procedure merely be different or less favorable than that of the United States.").  In sum, this case should be dismissed on *forum non conveniens* grounds

---

[14] These "public interest" factors include:  (i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized controversies decided at home; (iii) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (iv) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (internal quotation omitted).

because the forum-selection clause in the IFAA is valid and Plaintiffs cannot meet the substantial burden of showing that enforcement would be unjust.

### III.

### THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS LACK STANDING

"Under New York law, unless a party has contractual privity or is a third-party beneficiary of a contract, it lacks standing to enforce the terms of the agreement." *See, e.g.*, *Eaton Vance Mgmt. v. Forstmann Leff Assocs., LLC*, No. 06 CIV.1510 WHP, 2006 WL 2331009, at *6 (S.D.N.Y. Aug. 11, 2006).[15]  Plaintiffs lack standing because there is no contract between Israel and the Estate and, therefore, Plaintiffs do not have standing as parties or as third-party beneficiaries to the contract to assert their claims. *See* Am. Compl., Ex. A, US FAA.

Plaintiffs allege that Jaime Jacubovich lacked authority to act on behalf of the Estate because he is purportedly neither an heir nor a legal representative of the Estate  (*see* Am. Compl. ¶¶ 47-48).  On those terms, Jaime Jacubovich did not have authority to enter the Estate into a contract with Israel and, therefore, Plaintiffs lack standing because there is no privity between Israel and the Estate.[16]  *See, e.g.*, *Roistacher v. Bondi*, 624 Fed.Appx. 20, 23 (2d Cir. 2015) (no privity between the estate and the promisee where the promisor-heirs did not have the authority to bind the estate); *In re Bigler's Estate*, 35 N.Y.S.2d 658 (Sur. Ct. 1942) (agreement entered into by relative who was not a fiduciary had no authority to bind the estate was

---

[15] To the extent that the Court reaches this argument, Defendants submit that New York law would apply under the US FAA.  *See* Am. Compl. ¶ 15; *id.* Ex. A, US FAA § 9.10.

[16] This is the case if anyone other than Plaintiffs purchased the Bonds.  Plaintiffs are purportedly the sole heirs of the Estate and the only people in a position to bind the Estate, and Plaintiffs do not allege to have arranged for the purchase of the Bonds.  *See* Am. Compl. Further, in Argentina, an estate is not a legal entity distinct from the heirs.  *See, e.g.*, Cámara Nacional de Apelaciones en lo Civil, sala A, 27/02/1981, Brennan de Cavanagh, Margarita, LA LEY, 1981-C, 524 - AR/JUR/5633/1981 ("La 'sucesión' no es una entidad distinta de los herederos, pues carece de personalidad propia.").  Translated from Spanish, this means that, "'The estate' is not an entity different from the heirs, as it lacks self-existence."

unenforceable); *Eaton Vance Mgmt. v. ForstmannLeff Assocs., LLC*, No. 06 CIV.1510 WHP, 2006 WL 2331009, at *6 (S.D.N.Y. Aug. 11, 2006) ("Under New York law, unless a party has contractual privity or is a third-party beneficiary of a contract, it lacks standing to enforce the terms of the agreement.").

Plaintiffs do not allege that they are third-party beneficiaries to the US FAA and in any event, both the US FAA and the IFAA expressly provide that there are no third party beneficiaries. *See* Am. Compl. Ex. A, US FAA § 9.16 ("The provisions of this Agreement are intended to benefit only Fiscal Agent, the State and their respective permitted successors and assigns. No rights shall be granted to any other person by virtue of this Agreement, and *there are no third party beneficiaries hereof*.") (emphasis added); *see* Malangone Decl. Ex. 1, IFAA § 9.18 ██████[17] Furthermore, given the facts alleged here, it would be absurd to allege that Jaime Jacubovich purchased the Bonds on behalf of the Estate with the intent of benefiting Plaintiffs—the very parties from whom Jaime is alleged to have misappropriated the funds.

Finally, Plaintiffs' assertion that they are parties to the US FAA because the bonds were issued in "definitive form," such that Schedule B to the agreement applies and is incorporated into the US FAA, is wrong and in any event, insufficient to establish standing. *See* Am. Compl. ¶¶ 24-25, 27-30, 32-36; *see also* Am. Compl., Ex. A, US FAA § 2.3(a) ("Purchasers of Bonds shall not be entitled to receive certificated Bonds in a definitive form ('Definitive Bonds'), *unless specifically requested in accordance with the terms of the Bonds*.") (emphasis added); *id.* § 2.3(b) ("Definitive Bonds shall be substantially in the form attached hereto as Schedule B, all provisions of which are *expressly incorporated into and made a part of this*

---

[17] Under the terms of the IFAA, whether Plaintiffs have standing to maintain a claim for breach of the IFAA (and they do not) is a matter that must be addressed by a court in Ontario, Canada. *See, e.g., Amto, LLC*, 168 F.Supp.3d at 571.

*Agreement and of each Bond*, whether issued as Definitive Bond or in book-entry form.")
(emphasis added).  Assuming *arguendo* that the U.S. Prospectus applies as Plaintiffs claim (it
does not), its terms are consistent with the terms of the US FAA:  "In general, bonds will be
issued only in book entry form.  Therefore, bond certificates will not be issued. . . Certificates
will be issued only to government agencies, pension fund, financial institutions and Employee
Benefit Plans (as defined in the Prospectus) that so request at the time of purchase."  *See* Mulvey
Decl., Ex. B, U.S. Prospectus at 3.

## IV.

## THE COURT SHOULD DISMISS FOR FAILURE TO STATE A CLAIM

On a Rule 12(b)(6) motion to dismiss, the Court will accept the non-conclusory
factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's
favor.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *Goldstein v. Pataki*,
516 F.3d 50, 56 (2d Cir. 2008).  Further, the Court is "not bound to accept as true a legal
conclusion couched as a factual allegation."  *See, e.g.*, *Simms v. City of New York*, 480 F. App'x
627, 629 (2d Cir. 2012).

A.    Plaintiffs Have Failed to State a Claim for Breach of Contract (Counts II, IV)

To establish a viable claim for breach of contract under New York law, a plaintiff
must allege:  "(1) the existence of an agreement, (2) adequate performance of the contract by the
plaintiff, (3) breach of  contract by the defendant, and (4) damages."  *See Eternity Global Master
Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (applying New
York law).  Plaintiffs have failed to allege that any breach of contract occurred here.

Assuming *arguendo* that Plaintiffs have established standing, it necessarily
follows that Jaime Jacubovich had authority to bind the Estate, and that he had the necessary
authority to direct payments associated with the Bonds.  In that event, Plaintiffs' breach of

contract claims fail because Plaintiffs have alleged that Defendants made payments on the Bonds pursuant to the instructions on the account for the Estate supplied by Jaime Jacubovich.  *See* Am. Compl. ¶¶ 55-59, 63.  There are no allegations that Israel did not make the payments on the Bonds.  In other words, if Jaime Jacubovich did in fact bind the Estate, Israel fully performed under the Bonds by following Jaime Jacubovich's payment instructions.

In sum, Plaintiffs' claims amount to little more than an argument that because they did not receive certain payments, there must have been a breach of contract.  *See, e.g.*, *id.* ¶¶ 56, 94.  This is an impermissible overreach.  Any claims Plaintiffs may have with respect to the Bonds are likely exclusively against Jaime Jacubovich, not Israel, and should be pursued (as they already are) in a South American court, where Plaintiffs and Jaime Jacubovich are understood to reside.  *See id.* ¶¶ 59, 63-64; *Gonzolo Manuel Vergara, et al. v. Jaime Moises Jacubovich, et al.*, Case No. 49079/2016.

## B.   Plaintiffs Have Failed to State a Claim for Declaratory Judgment because Count VII is Vague and Conclusory

Finally, Plaintiffs' cause of action for declaratory judgment arising from certain unspecified "Additional Amounts" that Plaintiffs claim they are owed  should be dismissed as vague and conclusory.[18]  Plaintiffs allege that based on an email, which they do not attach to the amended complaint, Defendants owe them $1,114,498.70 under terms of approximately twenty bonds (other than the First Bond and the Second Bond), "including, but not limited to," certain enumerated bonds.  *See* Am. Compl. ¶ 68 (emphasis added).  This is wholly insufficient.

---

[18]   Plaintiffs seek a judgment declaring that they "succeeded to all rights of Manuel Jacubovich and the Estate of Manuel Jacubovich with respect to certain, unspecified Additional Amounts and to any another amounts held in the name of Manuel Jacubovich or the Estate of Manuel Jacubovich . . . ," and are entitled to payment of the Additional Amounts totaling at least $1,114,498.70 as well as any other amounts held in the name of either Manuel Jacubovich or the Estate of Manuel Jacubovich."  *See* Am. Compl., Count VII, *¶¶* 158-164; *see also id.* ¶¶ 68-74.

It is unclear which agreements Plaintiffs seek to rely upon (which are not attached to the amended complaint), let alone (i) whether Plaintiffs are actually parties and/or have standing; (ii) who the proceeds of the bonds were paid to; (iii) the status of Israel's sovereign immunity with respect to the claims; (iv) whether DCI or IBI sold the bonds at issue, and *inter alia* (v) which Computershare entity served as fiscal agent.  This, like Plaintiffs' other claims, should be dismissed because the mere allegation that Plaintiffs did not receive certain bond payments does not equate to a cognizable cause of action.

## **CONCLUSION**

For the reasons set forth above, Israel respectfully requests that the Court grant its motion to dismiss the amended complaint in its entirety, and such other and further relief as this Court deems just and equitable.

Dated:  New York, New York
        September 7, 2018

ARNOLD & PORTER KAYE SCHOLER LLP

By:    /s/ Samuel Lonergan
        Samuel Lonergan
        Stephanna F. Szotkowski
        Sofia A. Skarlatos
        250 West 55th Street
        New York, NY  10019-9710
        Telephone:  (212) 836-8000
        Fax:  (212) 836-8689

        *Attorneys for Defendant the State of Israel*