UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
NICOLE SOFIA JACUBOVICH and CALANIT
DIVA JACUBOVICH,

               Plaintiffs,               **MEMORANDUM AND ORDER**

      - against -                      18 Civ. 3326 (NRB)

THE STATE OF ISRAEL, COMPUTERSHARE
INC., and COMPUTERSHARE TRUST
COMPANY, N.A.,

               Defendants.
------------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


    Plaintiffs, two Argentinian sisters who profess to be the sole heirs to the Argentinian estate of their late great uncle under Argentinian probate law, bring this action alleging that the State of Israel and two related entities collectively characterized as Israel's fiscal agent (hereinafter "Computershare") failed to transfer to the plaintiffs, in whole or in part, the proceeds of two Israeli bonds, which were owed to the estate. The plaintiffs allege specifically that the proceeds of the first bond (some $5.425 million) were instead transferred to a Panamanian bank account in the name of the estate but in fact controlled by the plaintiffs' Argentinian grandfather -- who the plaintiffs allege is neither an administrator of nor an heir to the estate -- and that, while the plaintiffs were thereafter

1

transferred the principal proceeds of the second bond (some $4.94 million), they did not receive certain interest owed on that amount.  The instant action represents at least the third initiated in as many countries by either the plaintiffs or their grandfather, who each claim entitlement to -- and consequently seek recovery of -- the full proceeds of both bonds.[1]

Both Israel and Computershare move to dismiss this action on a variety of jurisdictional and substantive grounds, and for the reasons that follow, those motions are granted.

## I. Facts and Analysis

While the facts that gave rise to this litigation are complicated,[2] those relevant to the disposition of the pending motions are straightforward.  Accordingly, only that background information needed to make sense of the analysis set forth below is interwoven.

---

[1] In 2016, the plaintiffs filed a criminal complaint in Argentina against their grandfather, alleging that he misrepresented himself to be an heir to the estate and thereby fraudulently received the proceeds of the first bond; according to the plaintiffs' Argentinian counsel, the plaintiffs can collect damages in that proceeding in the event of a conviction.  See ECF No 48 at 16.  Also in 2016, the plaintiffs' grandfather filed a civil suit in Panama against Computershare and an Israeli entity, alleging that the proceeds of the second bond were improperly paid to the plaintiffs instead of to the designated account for the estate.  Both of those cases are reportedly ongoing, and the risk that duplicative or inconsistent obligations will be imposed on the parties involved -- under multiple nations' laws -- thus looms over this litigation.

[2] "[T]he facts giving rise to this action straddle at least five countries across three continents," ECF No. 53 at 23, involve a wide cast of governmental and private entities as well as individuals, and derive from a messy and opaque "Argentinian family squabble," ECF No. 40 at 1.

2

### A. Claims Against Israel

The plaintiffs' claims against Israel are subject to the constraints of the Foreign Sovereign Immunities Act ("FISA"), which immunizes any foreign sovereign from suit in a U.S. court by depriving the court of both subject matter and personal jurisdiction "unless [the plaintiff can demonstrate that] a specific statutorily defined exception applies." Arch Trading Corp. v. Republic of Ecuador, 839 F.3d 193, 200 (2d Cir. 2016) (internal quotation marks omitted); see Virtual Countries, Inc. v. Republic of S. Africa, 300 F.3d 230, 241 (2d Cir. 2002).[3] Here, the plaintiffs point to the statute's "waiver exception," arguing that Israel has "waived its immunity either explicitly or by implication."[4] 28 U.S.C. § 1605(a)(1). As to their primary argument -- that Israel has *explicitly* waived its immunity -- the plaintiffs rely on waivers admittedly contained in two separate documents: (1) a 2010 prospectus issued in the United States in connection with an Israeli bond offering and (2) the fiscal agency agreement ("FAA") between Israel and Computershare related to that

---

[3] As a technical matter, the FISA does not impose a burden on the plaintiff until the defendant makes out a prima facie case that it is a foreign sovereign. See Virtual Countries, Inc., 300 F.3d 241. Here, however, Israel's status as a foreign sovereign is undisputed.

[4] During the telephonic oral argument on these motions held on August 8, 2019, the plaintiffs for the first time argued in the alternative that the "commercial exception" in 28 U.S.C. § 1605(a)(2) applies to strip Israel of its sovereign immunity. The plaintiffs, however, failed to articulate which of § 1605(a)(2)'s three clauses purportedly applies, and the Court is aware of no facts that would support the application of any of them.

3

bond offering.[5]  But the plaintiffs' reliance on both of those documents is misplaced.

The U.S. prospectus, which was written for and used in connection with only *domestic*[6] bond sales, does not support the plaintiffs' assertion of an explicit waiver of sovereign immunity for the simple reason that it does not apply to the *internationally*-sold bonds at issue in this case.  Tellingly, though they have declined to expressly concede the point, the plaintiffs do not forcefully dispute that the U.S. prospectus applies only to domestically-sold bonds.  Indeed, as much is apparent from the plain terms of the document.  The U.S. prospectus provides that the bonds covered thereunder are those sold "through the Development Corporation for Israel" ("DCI"); that "DCI is the sole and exclusive underwriter of the bonds in the United States"; that "Israel sells the bonds . . . outside of the United States" "through additional underwriters" -- namely, Canada-Israel Securities Ltd. ("CSL") for all bond sales "in Canada" and Israel Bonds International ("IBI") for all bond sales "outside of the United States and Canada"; that "[t]his prospectus and the

---

[5] The waiver contained in the U.S. prospectus applies to suits arising out of the bonds covered thereunder in "any federal court in the Southern District of New York, any state court in the City of New York[,] or [] any competent court in Israel," ECF No. 37-2 at 24, while the waiver contained in the FAA applies to suits arising out of the FAA itself in "the United States District Court for the Southern District of New York or [] a New York State court in the County of New York, ECF No. 16-1 at 26.

[6] The term "domestic" is used herein to refer to occurrences in the United States.

prospectus supplement relating to a particular issue of bonds," as well as the applicable "Customer Information Forms and Investment Forms," will be provided to prospective purchasers "by DCI"; and that "Prospectuses, Customer Information Forms and Investment Forms are available outside of the United States from the appropriate local underwriter." ECF No. 37-2 at 15, 23-24. As a representative of DCI has more expressly attested, "the distinction between brokers that facilitate the sale of [Israeli] bonds in the United States (*i.e.*, DCI) and those that facilitate the sale of bonds outside of the United States (*i.e.*, CISL and IBI) determines the information that is provided to prospective bond purchasers." ECF No. 37 at 2. Specifically, "[w]ith respect to domestic purchasers of bonds, DCI shows prospective bond purchasers the U.S. Prospectus," whereas "[w]ith respect to [any prospective] international purchasers" who "contact DCI" with bond-related inquiries, "DCI refers such customers to the appropriate . . . international sales agent," which, "consistent with the process described in the U.S. Prospectus," provides the documentation applicable to its sales. Id. at 2, 4. Furthermore, the plaintiffs do not so much as allege -- and Israel has represented that it knows of no evidence to support any contention -- that the U.S. prospectus was ever used in connection with an international sale of Israeli bonds. Finally, as is elaborated on extensively below, the U.S. prospectus names as Israel's fiscal

5

agent for the bonds covered thereunder an entity that serves as Israel's fiscal agent only for domestically-sold bonds pursuant to a publicly available agreement referenced in the prospectus. See ECF No. 37-2 at 4.

Faced with these facts, the plaintiffs focus their efforts on arguing that the bonds at issue in this case should be assumed to be domestic (and thus covered by the U.S. prospectus), or that, alternatively, Israel should be equitably estopped from relying on the inapplicability of the U.S. prospectus to international bonds.

As to the former argument, the plaintiffs lack ground on which to stand. Their position, supported only by their own naked assertion that the circumstances of the bonds' purchase are unknown at this stage,[7] is belied by evidence in the record indicating that the bonds were in fact purchased internationally. For instance, as the plaintiffs conceded at oral argument, the bonds appear to have been purchased on behalf of the estate by the plaintiffs' grandfather, an Argentinian citizen who -- documents show -- has informed a Panamanian court through counsel that he purchased the bonds from Panama. Additionally, a representative of U.S.-based Computershare -- Israel's fiscal agent for domestically-sold bonds, which are underwritten "exclusive[ly]" by DCI -- has unambiguously attested that "[t]he bonds at issue in this

---

[7] Although the bonds were purchased on behalf of the estate in 2012, the plaintiffs, who purportedly acceded to their rights to the estate in 2011, did not learn of the bonds until 2014, the year in which the bonds matured.

6

litigation . . . were issued outside of the United States to a non-U.S. bondholder . . . through IBI," "the underwriter of [Israeli] bonds issued . . . outside of the United States and Canada." ECF No. 41 at 2-3. This, in turn, accords with the evidence that the bonds "were not registered on the [Israeli] bond registry maintained in the United States by Computershare," but were instead "registered on the [Israeli] bond registry maintained" in Canada by "Computershare Trust Company of Canada" ("CTCC") -- an entity distinct from any named as a defendant in this case -- which serves as Israel's fiscal agent for "bonds sold outside of the United States to non-U.S. residents" through IBI. Id. Moreover, all of the foregoing is consistent with the evidence reflected in the declaration of the plaintiffs' Argentinian counsel, Melina Shapira -- submitted to this Court by the plaintiffs themselves -- evincing *IBI's* role in the bond sale, such as the plaintiffs' receipt of a package "from IBI in Israel" on July 18, 2014 enclosing the proceeds of the second bond, and Shapira's receipt of a letter from the "General Counsel of DCI in New York" on September 8, 2017 "assert[ing] that DCI had not been involved in the sale of bonds," which had occurred "outside the United States." ECF No. 48 at 6, 20. In light of this substantial body of adverse evidence -- and particularly considering that the plaintiffs have already obtained discovery in the form of documents and deposition testimony from at least Computershare, DCI, and the

7

Israeli Ministry of Finance in the course of a 28 U.S.C. § 1782 proceeding[8] brought in connection with the ongoing criminal case against the plaintiffs' grandfather in Argentina -- the plaintiffs' proffer of no more than the mere possibility that information supporting their assertion of jurisdiction could theoretically come to light does not suffice to sustain their burden.

Turning to the plaintiffs' fallback estoppel argument, the same result obtains. Under the doctrine of equitable estoppel, "a party may be estopped from pursuing a . . . defense where: 1) [that party] makes a misrepresentation of fact" -- either affirmatively or through silence in the face of "a legal duty to speak" -- "to the other party with reason to believe that the other party will rely upon it; [and] 2) [] the other party [indeed] reasonably relies upon it . . . to her detriment." Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 725 (2d Cir. 2001).[9] Neither of the two ways in which the plaintiffs attempt to invoke this doctrine to estop Israel from relying on the irrelevance of the waiver of sovereign immunity contained in the U.S. prospectus has merit.

---

[8] See In the Matter of the Application of Nicole Sofia Jacubovich and Calanit Diva Jacubovich for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782, No. 17-mc-00489-KPF (S.D.N.Y.) (Failla, J.).

[9] Because this estoppel claim concerns the enforcement of a federal statute, "federal law principles of equitable estoppel are applicable." Id.

First, the plaintiffs' estoppel argument fails easily to the extent it is predicated on the fact that the U.S. prospectus was publicly filed with the U.S. Securities and Exchange Commission such that, even if Israel's international underwriters never used it in connection with international sales, international purchasers could have theoretically independently accessed it over the internet and mistakenly relied on its waiver of sovereign immunity in making their purchasing decisions. Putting aside the many other holes in this argument, the plaintiffs have not even alleged that their grandfather (or anyone else acting on behalf of the estate) actually saw -- much less relied on -- the prospectus prior to purchasing the bonds.

Second, while somewhat more colorable, the plaintiffs' estoppel argument based on Shapira's pre-litigation interactions with individuals associated with Israel also does not advance their case. Admittedly, in several years of correspondence and meetings with individuals associated with Israel -- through which Shapira sought to resolve the plaintiffs' claim to the bonds and, at times, expressly contemplated litigation -- nobody ever informed Shapira that the U.S. prospectus (and its waiver of immunity from suit in this Court) did not apply to the bonds.[10] Likewise, the plaintiffs

---

[10] Shapira states that she discovered the U.S. prospectus on the internet during the course of her investigation into her clients' case in April 2015 -- roughly a year into the aforementioned correspondence and meetings. See ECF No. 53 at 7.

9

thereafter (albeit through different counsel) filed the instant suit at least partially in reliance on that waiver. But critically -- and unsurprisingly -- the plaintiffs cannot identify any "legal duty" that Shapira's interlocutors had to affirmatively disclaim the applicability of an inapplicable document merely because it could be accessed over the internet. Id. Nor do the plaintiffs point to any time at which Shapira even hinted at the notion that the plaintiffs' proposed suit might rely to any extent on the U.S. prospectus so as to give rise to a duty on the part of her interlocutors to correct an "explicit contrary assumption," Gen. Elec. Capital Corp. v. Armadora, S.A., 37 F.3d 41, 45 (2d Cir. 1994), even assuming such a duty exists under federal principles of equitable estoppel, see Kosakow, 274 F.3d at 725-26. Shapira, at most, "mentioned suing in New York" at a meeting attended by the plaintiffs' current counsel, Israel's current counsel, and an in-house lawyer for DCI (which was not ultimately named as a defendant in this action). ECF No. 48 at 21. But that alone did not even put Israel on notice of the FISA exception on which the plaintiffs believed they could rely in bringing such a suit, and counsel was certainly not obligated in that moment to marshal every conceivable jurisdictional defense that Israel might ultimately raise.[11] Moreover, evidence in the record reveals that, at multiple

---

[11] The plaintiffs' assertion that Israel in some way "directed" them to file suit in New York and thereby baited them into relying on the waiver in the

10

points, Israel did put the plaintiffs on notice of the fact that CTCC -- and not Computershare, the entity that the U.S. prospectus explicitly names as Israel's fiscal agent for the bonds covered thereunder, see ECF No. 37-2 at 4 -- had acted as the fiscal agent for the bonds at issue.[12] Far from hiding the ball, this information served to indicate that the U.S. prospectus did not apply. Accordingly, there is no basis for a finding of estoppel, and the inapplicability of the U.S. prospectus therefore dooms the plaintiffs' claim that an explicit waiver of immunity contained therein permits this suit to be brought here.

---

U.S. prospectus has no basis in the record. ECF No. 53 at 15. First, contrary to what the plaintiffs apparently suggest, it was in no sense reasonable for them to assume that Israel consented to be sued in New York merely because a large number of the officials and attorneys who communicated with Shapira were themselves physically located in New York City. And second, contrary to the plaintiffs' characterization of a discussion recounted in Shapira's declaration, Donald Bezahler, a lawyer for IBI, did not tell Shapira that the plaintiffs could bring this suit against Israel in New York. Rather, as Shapira attested, during that discussion Bezahler asserted his belief that the plaintiffs had no grounds on which to sue either Israel or IBI whatsoever and merely offered his suggestion as to possible venues -- "New York, Argentina, Panama and Jerusalem" -- in which the plaintiffs might bring suit against one or more of the parties that he considered actually liable -- "the New York bank [that] made the wire transfer into the Panamanian account" controlled by the plaintiffs' grandfather, "the bank in Panama" that permitted the plaintiffs' grandfather to withdraw the funds, and the plaintiffs' grandfather himself. ECF No. 48 at 13-14.

[12] For example, the checks that the plaintiffs did receive with bond proceeds were issued from the State of Israel "By Its Fiscal Agent Computershare Trust Company of Canada." ECF No. 58-1 at 2. And IBI's lawyer Donald Bezahler reported to Shapira by letter that the bond proceeds that the plaintiffs did not receive had been paid by "the Fiscal Agent -- CPU in Canada," ECF No. 48 at 15. Furthermore, the identity of the proper fiscal agent was communicated in explicit terms to the plaintiffs' current counsel in a letter from Computershare's in-house counsel sent in connection with the plaintiffs' 28 U.S.C. § 1782 proceeding two months before the instant suit was filed. See ECF No. 58-1 at 2 ("I want to respectfully advise you that you have served the incorrect party. Computershare Trust Company of Canada, a separate legal entity, is the [applicable] fiscal agent . . . .").

For virtually the same reasons, the FAA between Israel and Computershare, which appoints Computershare as Israel's fiscal agent for the bonds covered under the U.S. prospectus, does nothing to advance the plaintiffs' claim that Israel has explicitly waived its sovereign immunity from the instant suit. Like the U.S. prospectus, the FAA itself expressly states that it pertains only to Israeli bonds sold through DCI, Israel's exclusive underwriter for domestically-sold bonds. An entirely separate fiscal agency agreement between Israel and an entirely distinct entity, CTCC, appoints CTCC as Israel's fiscal agent for Israeli bonds sold through Israel's exclusive underwriters for internationally-sold bonds, including IBI for bonds sold outside of the United States and Canada. It is under the purview of the latter agreement that the internationally-sold bonds at issue here fall, as evidenced by, *inter alia*, the fact that the bonds were registered by CTCC on its register in Canada rather than by Computershare on its register in the United States; therefore, the waiver of immunity contained in the FAA is wholly inapplicable to the plaintiffs' claims. While the international fiscal agency agreement contains its own waiver of immunity, that waiver applies only to suits brought in Canada. Thus, even if that waiver gives third parties such as the plaintiffs the right to sue Israel -- a proposition that Israel justifiably contests -- it plainly does not give them the right to do so in this Court. Finally, insofar as the plaintiffs' estoppel

argument concerning the U.S. prospectus extends further to the FAA, it founders on the same grounds set forth above. Particularly damning to that argument is the evidence that, prior to the commencement of this suit, the plaintiffs were given actual notice of the fact that CTCC, an entity that is distinct from Computershare and not a party to the FAA, served as fiscal agent for the bonds.

The plaintiffs' last-ditch argument -- that Israel should be held to have *implicitly* waived its sovereign immunity, either by agreeing for New York law to govern the bonds or by cooperating in the plaintiffs' 28 U.S.C. § 1782 proceeding[13] -- is not worthy of lengthy discussion. On the choice-of-law point, the plaintiffs again rely on the mistaken belief that the bonds at issue are domestically-sold bonds covered under the U.S. prospectus and therefore subject to the prospectus's choice-of-law clause. And on the § 1782 point, the plaintiffs cite absolutely no support for the dubious proposition that a foreign sovereign can be stripped of its immunity as a consequence of having complied with a subpoena in an entirely separate action, whether or not it conditioned its compliance on entry of a protective order. Israel should not be punished for having assisted the plaintiffs in their pursuit of

---

[13] The Court assumes without deciding that the Israeli Ministry of Finance -- the entity that was actually subpoenaed in the § 1782 proceeding -- is indistinguishable in all material respects from the sovereign State of Israel.

criminal liability against their grandfather in Argentina, and a contrary rule would do violence to the interests served by § 1782.

Because the plaintiffs have therefore failed to identify an applicable waiver of Israel's sovereign immunity, that immunity bars them from proceeding against Israel in this suit.[14]

**B. Claims Against Computershare**

As is abundantly clear from the foregoing, Computershare -- which did not serve as Israel's fiscal agent for the bonds at issue -- is not a proper defendant in this action, having played no role in the events underlying the plaintiffs' claimed injury, and having alerted the plaintiffs to the facts establishing as much before this action was even commenced. Indeed, the plaintiffs do not dispute the key facts establishing which entity actually served as Israel's fiscal agent, and their arguments that Computershare should in some way be estopped from asserting certain jurisdictional defenses are therefore moot, as the plaintiffs' claims (if any) against a fiscal agent arise only against CTCC.

---

[14] This conclusion applies with equal force to the plaintiffs' sole claim that concerns not the two bonds discussed heretofore, but an unspecified number of "additional" bonds for which the plaintiffs allege that they are owed "at least $1,114,498.70" in proceeds from Israel. ECF No. 16 at 13. The plaintiffs advance merely the conclusory allegation that "Israel . . . irrevocably agreed not to assert any defense based on immunity, including foreign sovereign immunity," in "actions arising out of or based on" an unspecified number of those bonds. Id. at 14. But they proffer absolutely no basis for that assertion. And although Israel's moving brief highlighted this obvious deficiency, the plaintiffs made no attempt, either in their opposition brief or at oral argument, to cure it. Accordingly, the plaintiffs fall woefully short of carrying their "burden of going forward with evidence showing that" a FISA exception applies to permit suit against Israel on the additional bonds. Virtual Countries, Inc., 300 F.3d 241 (internal quotation marks omitted).

Accordingly, and in a concession to this reality, the plaintiffs use their brief opposing the pending dismissal motions to -- for the first time -- seek leave to amend their (already) amended complaint in order to substitute in CTCC for Computershare as the proper fiscal agent defendant. However, it is apparent that any such amendment would be futile, as CTCC would not be subject to personal jurisdiction in this Court. See Balintulo v. Ford Motor Co., 796 F.3d 160, 164-65 (2d Cir. 2015) ("A proposed amendment to a complaint is futile when it could not withstand a motion to dismiss." (internal quotation marks omitted)). There is no allegation that CTCC, "a Canadian-incorporated and domiciled entity that has no United States place of business," would be subject to general jurisdiction here. ECF No. 57 at 8. And even to the extent that CTCC has "transact[ed] [] business" in New York for purposes of specific jurisdiction under the state's long-arm statute, N.Y. C.P.L.R. 302(a)(1), the plaintiffs' proposed claims do not enjoy the "requisite nexus" with those transactions, AVRA Surgical Robotics, Inc. v. Gombert, 41 F. Supp. 3d 350, 359 (S.D.N.Y. 2014) (internal quotation marks omitted). Specifically, even if CTCC has sent "representatives" to "meetings" in "New York City" attended by representatives of the defendants, DCI, and IBI, there is no allegation that any conduct relevant to this case occurred at those meetings. ECF No. 53 at 22. And while the international fiscal agency agreement between CTCC and Israel

states that it was "executed and delivered in New York, New York," any cause of action that the plaintiffs might bring against CTCC plainly could not arise out of that expressly bilateral agreement, which grants "[n]o rights . . . to any other person" and disclaims the existence of any "third party beneficiaries." ECF No. 41-1 at 42, 46. Thus, even if the plaintiffs' proposed second amended complaint would advance colorable theories of liability against CTCC, there is no indication that any of the events underlying them occurred in New York. Consequently, notwithstanding the need to dismiss Computershare from this action, the plaintiffs are denied leave to proceed against CTCC in its stead.[15]

## II. Conclusion

For the foregoing reasons, the motions to dismiss filed by Israel and Computershare at ECF Nos. 36 and 38, respectively, are GRANTED, and the Clerk of Court is respectfully directed to terminate them.

**SO ORDERED.**

Dated: New York, New York
September 9, 2019

*/s/ Naomi Reice Buchwald*
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[15] Because none of the other amendments proposed in the plaintiffs' brief even purport to address the dispositive issues addressed in this Memorandum and Order, leave is denied as to all of them on the basis of futility.

16